MOORE, Judge.
 

 On April 6, 2006, Elizabeth Wendnagel' Ratliff (“the wife”), filed a complaint for a divorce from Robert Bryan Ratliff, Sr. (“the husband”). The husband filed his answer and a counterclaim for a divorce on April 25, 2006. The wife filed her answer to the husband’s counterclaim on May 10, 2006.
 

 On March 30, 2007, the husband filed a motion in limine, requesting that the trial court prevent the wife from presenting expert testimony because, he said, the wife’s attorney had only informed him that the wife had retained expert witnesses on March 22, 2007, and the trial was set for April 9, 2007. After a hearing, which was not transcribed, the trial court granted that motion.
 

 A trial, at which ore tenus evidence was received, was conducted over the course of five days, and, on May 11, 2007, the trial court entered a judgment divorcing the parties. That judgment provided, in pertinent part:
 

 “4. That the Court finds from all of the competent, material and relevant evidence that it is in the welfare and best interest of the minor children of the parties ... [that] the care, custody and control of the said minor children be and the same is hereby awarded as shared custody, with the primary residence being with the [husband].
 

 “I. Shared parental responsibility (Joint Custody) for a minor child means that both parents retain full parental rights and responsibilities with respect to their children and requires both parents to confer so that major decisions affecting the welfare of the children will be determined jointly.
 

 “II. Both [the wife] and [the husband] desire to be involved in the various activities of their minor children. These include academic, religious, civic, cultural, athletic, medical and dental activities of the minor child. [The wife] and [the husband] agree that they will consult with each other prior to initiating any such activity with the minor children. [The wife] and [the husband] agree to cooperate with one another in adjusting their schedules to assure that the children are delivered to ... and returned [sic] .... It is further agreed and understood that both parties will consult with one another regarding all such activities. It is further agreed and understood that [the wife] and [the husband] will notify one another as to any conferences, programs or events relating to such activities in such a way that both parties will have an opportunity to participate in such activities of the minor children.
 

 “The exercise of this primary authority is in no way intended to negate the responsibility of the parties to notify and communicate with each other as set forth hereinabove.
 

 “5. That the [wife] shall have the following visitation rights with the minor children of the parties:
 

 “(a) The first and third full weekends of each month from 6:00 p.m. on Friday until 6:00 p.m. the following Sunday (The first weekend of a month beginning on the first Friday of each month.);
 

 
 *575
 
 “(b) Each Christmas Day from 3:00 p.m. until 3:00 p.m. on the following New Year’s Day;
 

 “(c) Thirty-one (31) consecutive days during the summer (to be taken between one week after school is out and one week before school starts), to be selected by the [wife] but upon written notice to [the husband] at least thirty (30) days in advance of such visitation;
 

 “(d) During the odd years, A.E.A. (Spring Break) vacation from 9:00 a.m. Saturday until the following Saturday at 6:00 p.m.;
 

 “(e) During the even years, Thanksgiving vacation from 6:00 p.m. Wednesday until Sunday at 6:00 p.m.;
 

 “(f) Every other birthday of the children from 6:00 p.m. on said date until 8:00 a.m. of the following day, beginning with the next birthday;
 

 “(g) Every Mother’s Day from 9:00 a.m. until 6:00 p.m. of the same day. The children shall be with the [husband] on Father’s Day. If that day falls on a visitation weekend, the children shall be returned to [the husband] by 9:00 a.m. on that Sunday;
 

 “(h) On the birthday of the [wife] from 3:00 p.m. on said date until 8:00 p.m. of the same day;
 

 “(i) At such other times as agreed upon between the parties.
 

 “(j) At such times as the [husband] is out of town overnight without the children. Each parent shall keep the other informed on a current basis as to the primary residence address and telephone number where the children reside or visit
 

 [[Image here]]
 

 “That it is further ordered that during the time the [wife] shall have the physical custody of the minor children of the parties, the [wife] shall not consume or be under the influence of intoxicating beverages or stimulants.
 

 “8. That neither party shall have overnight company of the opposite sex other than immediate family members or their spouse if applicable in the future while the minor children of the parties are present.
 

 “9. It is further ordered that neither the [wife] nor the [husband] shall influence the minor children against the other nor shall the parties say disparaging words about one another in front of the minor children of the parties. The parties are directed to speak of one another in a positive manner in front of said children.
 

 “10. That the [wife] shall have access to all school, educational, doctor, hospital, or other medical reports, tests, and evaluations on said children. This provision constitutes [the husband’s] consent for the release of such information to [the wife],
 

 “11. The [wife] shall enjoy the right of reasonable telephone visitation with the minor children, at the [wife’s] expense. The [husband] shall neither interfere with nor listen in or be party to the telephone conversation during the said period of time.
 

 “12. That the Court hereby expressly reserves jurisdiction of the issue of child support to be paid by the [wife] to the [husband] for support and maintenance of the minor children of the parties for future Order of the Court. The [wife] is unemployed and the needs of the children and the parties combined incomes exceed the guidelines.
 

 “13. That the [wife] is presently unemployed; therefore, an Order entitled ‘Order/Notice to Withhold Income for Child Support,’ which is specifically incorporated herein as part of this Court’s
 
 *576
 
 Order in this cause and this Order/Notice
 
 SHALL NOT
 
 be served until further notice of this Court.
 

 “14. That the [husband] shall provide medical and dental insurance coverage for the use and benefit of the minor children of the parties until such time as the said minor children shall reach majority, marry or become self-supporting, and further, shall evidence same to the [wife] by providing a proper identification card within thirty (30) days from the date of this Final Judgment of Divorce.
 

 “15. That the [husband] shall pay and be responsible for all medical and dental expenses for the minor children of the parties not covered by medical and dental insux-ance until such time as the said minor children shall reach majority, marry or become self-supporting.
 

 “16. That the [husband] shall cooperate and assist the [wife] in obtaining, completing and returning to his employer any and all forms pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) in order to insure that the [wife] will have continuous hospital, medical and major medical insurance as provided by the tercns and conditions of COBRA. The [husband] shall be solely responsible for paying any and all premiums due for her coverage.
 

 “17. That the [husband] shall maintain and name the [wife] the irrevocable beneficiary of the life insurance policy on his life, with Valley Forge in the amount of Ten Thousand Dollars ($10,-000.00) until the [husband] shall either die or remarry. Said insurance policy shall not be assigned or otherwise further encumbered.
 

 “18. That the [husband] shall maintain and name the minor children of the parties the irrevocable beneficiary of the life insurance policy presently maintained on his life with Colonial Properties in the amount of Fifty Thousand Dollars ($50,000.00) until the said minor children shall reach majority, many, or become self-supporting. Said insurance policy shall not be assigned or otherwise further encumbered.
 

 “19. That the [husband] shall pay to the [wife] the sum of Eight Thousand Nine Hundred Dollars ($8,900.00), per month as periodic alimony, the first payment to be due and payable on May 1, 2007 and subsequent payments to be due and payable on the 1st day of each month thereafter. That the [husband’s] obligation hereunder shall terminate upon the first to occur of the following events: the [wife’s] death, the [husband’s] death, the [husband’s] remai’-riage, the [husband’s] commission of those acts contemplated in [§]30-2-55, Code of Alabama (1975), or as otherwise provided by law.
 

 “20. That the [husband] shall have the sole use and occupancy of the residence of the parties ... until such time as the minor childi*en of the parties shall reach their majority, many, become self-supporting, or die or until the [husband] remarries, dies or no longer uses said residence as the principal residence of himself and the minor children. In the event any of the foregoing shall occur, the residence shall be sold within one hundred eighty (180) days from the date of such event, at a private sale, and after the costs of said sale and the balance due, if any, on the mortgage now in existence are deducted, the [wife] shall receive the sum of Four Hundred Twenty Five Thousand Dollars ($425,000.00), of the equity in the said residence.
 

 “Further, in the event said residence is unsold at the end of said period, the Clerk of this Court shall hold a public
 
 *577
 
 sale upon affidavit by either party that said residence is unsold and prepayment of publication costs. Each party hereto shall be a competent bidder at same. The net proceeds shall be divided as stated hereinabove. In the event the residence has not been sold and the [husband] shall die, his equity as provided aforesaid shall pass to his estate.
 

 “21. That the [husband] shall pay the mortgage payments, taxes and insurance on the said residence of the parties until the said residence is sold as provided in Paragraph 21 hereinabove.
 

 “22. That the [husband] shall pay and be responsible for all interior maintenance and repairs, including the heating and air conditioning systems, to the aforesaid residence.
 

 “23. That the [husband] shall pay and be responsible for the exterior maintenance and repairs to the aforesaid residence.
 

 “24. That in the event the parties are vested as joint tenants with right of survivorship in the property described in Paragraph 21 hereinabove the same is hereby terminated.
 

 “25. That the Lake House rental through Russell Land is hereby awarded to the [husband] and the [wife] is divested of any right, title or interest therein and shall hold the [wife] harmless therefrom. Further, the 22’ Sea Ray Boat is hereby awarded to the [husband].
 

 “26. That each party to this action is awarded and shall retain the personal property presently in their respective possession.
 

 “27. That the [wife] is awarded the following items of furniture, furnishings, appliances and household equipment located in the residence of the parties and the [husband] is divested of any right, title or interest therein, and further the [husband] is directed to deliver the said items over to the [wife] forthwith:
 

 [[Image here]]
 

 “Further, the [wife] and [the husband] shall equally divide all family photos and albums or [the husband] shall copy all at his expense within ninety (90) days of this Order.
 

 “28. That the 2006 Honda CRV automobile is hereby awarded to the [wife] and the [husband] is divested of any right, title or interest therein, and further the [husband] shall perfect such documents necessary to transfer title to the [wife] forthwith. The [wife] shall be responsible for the ... indebtedness due on said automobile and shall hold the [husband] harmless therefrom.
 

 “29. That the 2002 Cadillac, 2006 VW Jetta and 1998 BMW M3 automobiles are hereby awarded to the [husband] and the [wife] is divested of any right, title or interest therein, and further the [wife] shall perfect such documents necessary to transfer title to the [husband] forthwith. The [husband] shall be responsible for the ... indebtedness due on [the Jetta] automobile and shall hold the [wife] harmless therefrom.
 

 “30. That the [wife] and [the husband] shall pay and be responsible for the paying the individual debts in then-respective names and shall hold one another harmless from any claims and expenses thereon.
 

 “31. That the [husband] is hereby awarded the membership in the Birmingham Country Club and the Five Star Plantation.
 

 “32. That the [husband] is awarded the UBS Financial Services, Inc. account that manages the Colonial Properties Trust shares and options.
 

 
 *578
 
 “38. That the [husband] is awarded the partnership units known as Collateral Holdings Limited.
 

 “34. That the [husband] is awarded the Wachovia Securities Account that manages the Triad Stock.
 

 “35. That the [wife] is awarded one half (½) of [the husband’s] Colonial Properties Trust 401(k) profit sharing plan as of April 9, 2007 and the remaining one half (½) of said plan is hereby confirmed in [the husband’s] name. To effectuate this property division, the parties shall cause a Qualified Domestic Relations Order (QDRO), acceptable to the Plan Administrator, to be presented to the Court for review and Order. This division shall be effective on the date of this Final Judgment of Divorce. The Court expressly reserves continuing jurisdiction of this aspect of the property division until a QDRO is accepted by the Plan Administrator.
 

 “36. That the [wife] is awarded her Morgan Keegan & Co., Inc. account.
 

 “37. That [the wife] is awarded all stock currently owned by [the wife] individually including but not limited to the following: (1) Collateral Holding Limited, (2) New South Bank shares, Class A stock, (3) New South Bank shares, Class B stock (4) and Triad Stocks.
 

 “38. That the [wife] is awarded one half (½) of [the husband]’s New South Bank Shares Inc. shares of both Class A and B common stock. That said transfer is contingent upon board approval since [the wife] is also a shareholder.
 

 “39. That the remaining New South Bank Shares Inc. shares shall be confirmed in [the husband’s] name.
 

 “40. That the [wife] maintains three accounts through Morgan Keegan & Co. Inc. in each of the children’s name under the Uniform Transfer to Minor’s Act each account is a completed gift and by stipulation shall be used to further their education with any remaining interest to be transferred to each individual child upon completion of their education.
 

 “41. That the [husband] maintains three accounts through USB Financial Services Inc. in each of the children’s names under the Uniform Transfer to Minors Act. Each account is a completed gift and by stipulation shall be used to further their education with any remaining interest to be transferred to each individual child upon completion of their education.
 

 “42. That the parties, through testimony, presented evidence of the following trust documents:
 

 “1. The Joyce A. Ratliff 2002 RBR Trust agreement (deceased).
 

 “2. The R. Bryan Ratliff Family Trust.
 

 “3. A marital share/trust from the last will and testament of James K.V. Ratliff
 

 “4. The James K.V. Ratliff 2002 Generation Skipping Trust Agreement.
 

 “5. The R. Bryan Ratliff 2006 Trust.
 

 “6. The Joyce A. Ratliff 2006 Trust.
 

 “That this Court finds that each of the documents/trusts are independent and not part of the marital estate and are therefore excluded therefrom.
 

 “43. Further, both [the wife] and [the husband] have sought and received professional counseling to address various issues both prior to and subsequent to their separation. [The wife] and [the husband] are encouraged to continue individual counseling to address all issues and be in the best interest of the children and their relationships.
 

 
 *579
 
 “44. That the issue of a college education for [the two minor children] is hereby reserved for future Order of the Court upon a timely filed petition by either parent.
 

 “45. That the [husband] shall pay to the [wife] the sum of Eighty Eight Thousand Dollars ($88,000.00) with which to pay her attorney of record, Jack Held for professional services rendered in this action.”
 

 (Emphasis and capitalization in original.)
 

 On May 29, 2007, the wife filed a motion to alter, amend, or vacate the divorce judgment. On July 9, 2007, the trial court granted the motion in part, stating:
 

 “2. That Paragraph 17 of the Final Judgment of Divorce heretofore rendered on May 11, 2007 shall be deleted in its entirety and substituted in lieu thereof the following: 17. That the [husband] shall maintain and name the [wife] the irrevocable beneficiary of the life insurance policy on his life, with Valley Forge in the amount of Ten Thousand Dollars ($10,000.00) until the [wife] shall either die or remarry. Said insurance policy shall not be assigned or otherwise further encumbered.’
 

 “3. That Paragraph 27(mm) of the aforesaid Final Judgment of Divorce is amended to read as follows: ‘27 mm. Dining room
 
 chairs.’
 
 ”
 

 On July 25, 2007, the court entered an order correcting a clerical error in the judgment as follows:
 

 “That Paragraph 19 of the Final Judgment of Divorce heretofore rendered on May 11, 2007 contains a clerical error therein and shall be corrected nunc pro tunc by deleting where in it reads in its entirety ‘... That the [husband’s] obligation hereunder shall terminate upon the first to occur of the following events: the [wife’s] death, the [husband’s] Death, the [husband’s] remarriage.... ’ and substituting in lieu thereof the following: ‘.That the [husband’s] obligation hereunder shall terminate upon the first to occur of the following events: the [wife’s] death, the [husband’s] death, the [wife’s] remarriage....’”
 

 On August 9, 2007, the wife filed her notice of appeal. The husband filed his notice of cross-appeal on August 21, 2007.
 

 Facts
 

 The parties married in 1985. The parties had three children. Beginning in 2004, the wife began experiencing mental problems. She began going out at odd hours without telling her husband and the children where she was going. On one such instance, she drove to the family’s lake house where her Bible-study teacher and his wife were staying. Upon arrival at the lake house, the wife told her teacher and his wife that she was in love with him. The wife subsequently enrolled in a mental-health facility for 30 days. Upon her release from that facility, she informed the husband that she had decided that she wanted a divorce. The wife testified that many of the parties’ problems resulted from the husband’s being controlling and narcissistic. In February 2006, the wife attempted suicide by overdosing on prescription drugs. After she had taken the drugs, she called for help and was taken to the hospital. The parties separated and reconciled several times. The wife left the marital residence for the final time in June 2006.
 

 At the time of the trial, the husband was 49 years old. The parties’ children were 20, 17, and 14 years old. The husband testified that his health is good, despite his previously having undergone surgeries to insert stints due to carotid artery disease. Both the husband and the wife have college degrees. The wife had been unemployed during most of the parties’ mar
 
 *580
 
 riage. The husband had been employed by Colonial Properties Services, Inc., as the senior vice president of retail development for 15 years. His base salary is $185,000 per year. He sometimes received bonuses, the most recent one being $200,000 in 2005.
 

 The parties’ adjusted gross income for 2005
 
 [1]
 
 was $1,179,683. The husband’s total wages were $353,959. The parties’ interest income was $129,333, and the parties’ dividend income was $22,811. They received $17,331 in refunds from state or local income taxes. They also received a distribution from a retirement plan in the amount of $34,605. The parties’ reported capital gains in the amount of $60,322 and other gains in the amount of $342. They reported income from partnerships and corporations in the amount of $560,980. The parties’ Alabama income-tax liability was $10,133, and the parties’ also had income-tax liability in other states in various small amounts.
 

 The parties’ accountant testified that approximately $214,000 of the income reported from New South Federal Savings Bank (“New South”)
 
 [2]
 
 and approximately $191,000 of the income reported from Collateral Holdings, Ltd., was not actually received by the parties. The parties’ accountant testified that the husband reported income from New South and Collateral Holdings in the amount of $681,217 and that the wife reported income from those two entities in the amount of $44,747. He testified that the husband actually received only $223,922 from New South and $58,857 from Collateral Holdings. He testified that the wife actually received only $10,905 from New South and $5,612 from Collateral Holdings. The accountant estimated that in 2005 the parties actually received approximately $398,085 in net cash flow.
 

 The marital home is valued at $1,000,000. The balance on the mortgage on the home is $150,000. The husband presented evidence indicating that the parties owed $10,000 on a boat. The wife introduced a document showing that she had debt totaling $25,900.99.
 

 The husband has a Colonial Properties Trust 401(k) profit-sharing-plan account valued at $225,000. The husband’s Collateral Holdings partnership units are valued at $3,254,809.50, and the wife’s Collateral Holdings partnership units are valued at $309,334.50. The husband testified that his father had given the parties the Collateral Holdings partnership units. The husband’s New South class A stock, which the court ordered divided equally between the parties, is valued at $2,808,169.65. The wife’s New South class A stock is valued at $136,715.40. There was no evidence presented regarding the parties’ New South class B stock. The husband had a Laden-burg Thalmann account valued at $8,000, a Wachovia Securities account that manages Triad stock valued at $2,971,360, and a UBS Financial Services, Inc., account that manages Colonial Properties Trust shares and options valued at $218,694.02. The husband testified that the Triad stock had been acquired through the Collateral Holdings partnership units. Neither the Col
 
 *581
 
 lateral Holdings partnership units nor the Triad stock may be transferred without board approval.
 

 The wife had a Morgan Keegan & Co., Inc., account valued at $91,686.24 and Triad stock valued at $230,280. The parties own four automobiles, two of which were driven by their two oldest children. They also own a boat valued at $7,000; there was a $10,000 loan owed on the boat. The husband presented a document wherein he valued the parties’ household items at $40,000. The parties also have a lake house that they rent out and memberships in the Birmingham Country Club and the Five Star Plantation. No value was assigned to those assets.
 

 There was evidence presented regarding several trusts that owned various assets; however, the trial court found that those trusts were not marital property.
 

 Discussion
 

 On appeal, the wife argues (1) that the trial court incorrectly found that certain trusts were not marital property; (2) that the trial court erred by excluding the wife’s expert witness; (3) that the trial court’s division of property was inequitable; (4) that the trial court’s award of alimony was inadequate; (5) that the trial court erred in ordering that the alimony would terminate upon the husband’s remarriage; (6) that the trial court erred by requiring the husband to maintain only a $10,000 policy of life insurance on his life for her benefit; (7) that the trial court erred by failing to implement a parenting plan; (8) that the trial court erred by failing to award her visitation on Christmas eve or on Christmas morning; (9) that the trial court erred by failing to specifically define the term “stimulants”; and (10) that the trial court erred by failing to require the husband to pay all the wife’s attorney fees and litigation expenses. On cross-appeal, the husband argues that the trial court exceeded its discretion in failing to order the wife to pay child support.
 

 Appeal
 

 I.
 

 We first address the wife’s argument that the trial court incorrectly found that the Joyce A. Ratliff 2002 RBR Trust and the R. Bryan Ratliff 2006 Trust were not marital property.
 

 Section 30-2-51(a), Ala.Code 1976, provides:
 

 “If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.”
 

 The wife does not argue that these trusts were not gifts or part of an inheritance. Instead, she argues that distributions from these trusts were used for the common benefit of the marriage and, thus, should have been considered as marital property.
 

 As to the Joyce A. Ratliff 2002 RBR Trust, the trustee of that trust testified that the only distribution that had ever been made from the trust was in August or September 2006 in order to purchase a new automobile for the wife after the parties’ daughter had wrecked the wife’s automobile. As to the R. Bryan Ratliff 2006 Trust, the husband testified that the only distributions that had been made from that trust were for his legal fees and to pur
 
 *582
 
 chase an automobile for the wife. The ■wife has not pointed us to any contrary evidence. Based on the foregoing, we conclude that the trial court could have determined that the aforementioned trusts were not used
 
 regularly
 
 for the common benefit of the parties during the marriage.
 
 See Bushnell v. Bushnell,
 
 713 So.2d 962, 964 (Ala.Civ.App.1997) (interpreting the word “regularly” as used in § 30-2-51(a) to mean frequent or periodic use of the property to satisfy needs of the family); see
 
 also Hull v. Hull,
 
 887 So.2d 904, 908 (Ala. Civ.App.2003) (holding that a one-time use of property for the common benefit of the parties cannot be considered “regular”). Accordingly, we cannot find error on this issue.
 

 II.
 

 The wife next argues that the trial court erred by excluding the wife’s expert witness. She argues that the husband was evasive and disingenuous when testifying about the values of the marital assets and submits that her expert would have provided the actual values of the marital assets to the court.
 

 On December 1, 2006, the wife moved to continue the case, stating that she had' retained a financial expert but that the expert had not completed his analysis and evaluation. The trial court continued the case. On or about March 30, 2007, the husband moved to exclude the wife’s expert witness. He alleged that the wife had only informed him on March 22, 2007, that she had retained Grant McDonald, a certified public accountant, to testify as an expert. He further averred that the wife had testified at her deposition on October 11, 2006, that McDonald would not be testifying at trial. Further, the husband averred that the wife had not provided the husband with a written report or any other documents regarding McDonald and that the husband had had insufficient time to depose McDonald and/or hire an expert of his own.
 

 On appeal, the wife argues that the husband was on notice that she would hire an expert as of December 1, 2006, and that there was no scheduling order requiring her to disclose the identity of her expert at any point in time. We note, however, that the husband alleged that the wife had testified at her deposition that she would not be calling McDonald as a witness. She then changed her mind and notified the husband approximately two weeks before the trial that she would be calling McDonald. The trial court apparently was convinced that it would be unfair to the husband to allow the expert to testify given those circumstances. The admission of testimony from witnesses whose identity may not have been disclosed in accordance with properly conducted pretrial-discovery procedure is within the trial court’s sound discretion; unless the trial court palpably exceeds that discretion, the trial court’s decision will not be disturbed on appeal.
 
 Edwards v. Valentine,
 
 926 So.2d 315, 330 (Ala.2005). A trial court does not exceed its discretion when it precludes an expert witness from testifying based on the prejudice to the opposing party from a tardy disclosure of the identity of the witness.
 
 See, e.g., Tuck v. Health Care Auth. of Huntsville,
 
 851 So.2d 498 (Ala.2002);
 
 Spruiell v. Robinson,
 
 582 So.2d 508 (Ala.1991); and
 
 Electrolux Motor AB v. Chancellor,
 
 486 So.2d 414 (Ala.1986). Based on the foregoing, we conclude that the trial court acted within its discretion in excluding the wife’s financial expert.
 

 Ill
 

 The wife’s next two arguments are that the trial court’s division of proper
 
 *583
 
 ty and its award of alimony are inequitable.
 

 “[M]atters of alimony and property division rest soundly within the trial court’s discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion.
 
 Welch v. Welch,
 
 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues.
 
 Willing v. Willing,
 
 655 So.2d 1064 (Ala.Civ.App.1995).”
 

 Henderson v. Henderson,
 
 800 So.2d 595, 597 (Ala.Civ.App.2000). Accordingly, we address these two issues together.
 

 “ ‘ “[WJhere the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’ ”
 

 Yeager v. Lucy,
 
 998 So.2d 460, 463 (Ala.2008) (quoting
 
 Reed v. Board of Trs. for Alabama State Univ.,
 
 778 So.2d 791, 795 (Ala.2000), quoting in turn
 
 Raidt v. Crane,
 
 342 So.2d 358, 360 (Ala.1977)). “[W]e note that there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.”
 
 Yohey v. Yohey,
 
 890 So.2d 160, 164 (Ala.Civ.App.2004).
 

 “Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; them ages and health; the duration of the marriage; their station in life; the marital properties and their sources, values and types; and the conduct of the parties in relation to the marriage.
 
 [Willing v. Willing,
 
 655 So.2d] at 1067 [ (Ala.Civ.App.1995) ]. Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court.”
 

 Henderson,
 
 800 So.2d at 597.
 

 In this case, based on the evidence before it, the trial court awarded the following marital property to the parties: _Husband_Wife_
 

 $425,000 equity in home ⅜425,000 equity in home
 

 $112,500 $112,500
 

 Colonial Properties Trust Colonial Properties Trust 401(k) profit-sharing-plan 401(k) profit-sharing-plan account_account_
 

 $1,404,084.83 $1,540,800.23
 

 New South class A stock New South class A stock
 

 $21,000 $91,686.24
 

 Cash_Morgan Keegan account
 

 $3,254,809.50 $309,334.50
 

 Collateral Holdings part- Collateral Holdings partnership units_nership units_
 

 Unknown Value Unknown Value
 

 New South class B stock New South class B stock
 

 $2,971,360 $230,280
 

 Triad stock_Triad stock_
 

 ($3,000) ($25,900.99)
 

 boat_Credit-card debt_
 

 $8,000
 

 Ladenburg Thalmann account_
 

 $218,694.02
 

 Colonial Properties Trust shares and options_
 

 $8,412,448.35 $2,683,699.98
 

 Total Value_Total Value
 

 The trial court’s division of property resulted in the wife being awarded property valued at $2,683,699.98, approximately 24% of the known value of the marital property.
 

 The parties’ accountant testified that the parties had a yearly net cash flow of approximately $398,085, or $33,173.75 per month. The trial court awarded the wife one-half of the husband’s New South stock. If we take the parties’ monthly net cash flow and subtract the following: $9,333 (one-half of the distributions generated by the husband’s New South stock), $2,633
 

 
 *584
 
 (the amount of the parties’ income attributable to the wife as reported on her CS-41 child-support-income affidavit), and $8,900 (the husband’s monthly periodic-alimony obligation), that leaves the husband with a monthly net cash flow of $12,307.75.
 
 [3]
 
 The wife, on the other hand, will have a monthly net cash flow of $20,866 ($2,633 + $9,333 -I- $8,900).
 
 [4]
 

 The wife submitted that her monthly living expenses were approximately $16,500, including taxes. Accordingly, even without working, the wife has more than enough income to meet her monthly expenses.
 

 Considering the fact that the wife’s monthly disposable income will exceed that of the husband’s, and considering the other relevant factors, we cannot say that the trial court exceeded its discretion in its division of property and its award of alimony.
 
 See Hendrix v. Hendrix,
 
 606 So.2d 142, 144 (Ala.Civ.App.1992) (“Even if a property division favors one spouse over the other, that is not, in and of itself, an abuse of discretion.”).
 

 IV.
 

 The wife’s next argument is that the trial court erred in ordering that the husband’s periodic-alimony obligation would terminate upon the husband’s remarriage. She acknowledges, however, that the tidal court entered an order on July 25, 2007, stating that that provision contained a clerical error and that the judgment should say that the alimony would terminate upon the
 
 wife’s
 
 remarriage, not the husband’s remarriage. The wife, however, expresses concern that the trial court was without jurisdiction to enter the July 25, 2007, order because it had previously ruled on her motion to alter, amend, or vacate the trial court’s judgment. We note, however, that a trial court may correct a clerical mistake in its judgment “at any time of its own initiative or on the motion of any party.” Rule 60(a), Ala. R. Civ. P.;
 
 Ex parte Brown,
 
 963 So.2d 604, 609 (Ala.2007). Accordingly, we conclude that the trial court had jurisdiction to correct the error.
 

 V.
 

 The wife also argues that the trial court erred by requiring the husband to maintain only a $10,000 policy of life insurance on his life for her benefit. A trial court may include a provision in a divorce judgment requiring a former spouse to maintain a life-insurance policy for the benefit of the other former spouse.
 
 Strong v. Strong,
 
 709 So.2d 1259 (Ala.Civ. App.1998). However, our caselaw indicates that it is within the trial court’s discretion whether to order a divorcing spouse to maintain a life-insurance policy for the benefit of the other spouse.
 
 See, e.g., Bush v. Bush,
 
 784 So.2d 299, 300 (Ala.Civ.App.2000). In
 
 Powell v. Powell,
 
 628 So.2d 832 (Ala.Civ.App.1993), this court rejected the same argument made by the wife in this case, stating:
 

 “The wife asserts that the court erred in the amount of life insurance it required the husband to provide for her benefit.
 

 “The court ordered the husband to maintain a $50,000 insurance policy on his life, with the wife as beneficiary. The wife insists that the amount ordered is insufficient to secure her periodic and
 
 *585
 
 in gross alimony awards should anything happen to the husband. She contends that the husband should be ordered to carry at a minimum a $300,000 policy.
 

 “The wife does not cite us to any authority to buttress her opinion that the husband is obligated to secure her future alimony payments. And we are not familiar with such a mandated obligation. The order to maintain life insurance was a benevolent gesture by the court and a matter within its discretion. It was not error for it to enter such an order....”
 

 628 So.2d at 834-35. As in
 
 Powell,
 
 the wife in this case has not cited any legal authority requiring a trial court, when making the “benevolent gesture” of ordering a divorcing spouse to maintain a life-insurance policy for the benefit of the former spouse, to establish an amount sufficient to secure all future alimony payments. Accordingly, we find no error in this regard.
 

 VI.
 

 The wife’s next argument is that the trial court erred by “failing to implement a parenting plan” as required by Ala.Code 1975, § 30-3-153. Specifically, the wife argues that the trial court erred by ordering the parties to share joint responsibility for all major decisions concerning the children without designating which parent should have final decision-making authority in the event of their disagreement. We note, however, that § 30-3-153 applies solely to joint-custody agreements; the parties did not agree to joint custody in this case. Section 30-3-151(2) gives the trial court the discretion to establish a parenting plan when awarding joint custody.
 
 See
 
 Ala.Code 1975, § 30-3-151(2) (“The court
 
 may
 
 designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.” (emphasis added)). The wife has not pointed us to any evidence that would compel the trial court to establish a parenting plan. Accordingly, we conclude that the trial court did not exceed its discretion in declining to designate which parent should have final decision-making authority on each issue with regard to the children.
 

 VII.
 

 The wife next argues that the trial court erred by failing to award her visitation on Christmas Eve or on Christmas morning.
 

 “The trial court has broad discretion in determining the visitation rights of a noncustodial parent, and its decision in this regard will not be reversed absent an abuse of discretion.
 
 Alexander v. Alexander,
 
 625 So.2d 433, 435 (Ala.Civ. App.1993). Every case involving a visitation issue must be decided on its own facts and circumstances, but the primary consideration in establishing the visitation rights accorded a noncustodial parent is always the best interests and welfare of the child.”
 

 Carr v. Broyles,
 
 652 So.2d 299, 303 (Ala. Civ.App.1994).
 

 We note that the trial court awarded the wife visitation on every Christmas day after 3:00 p.m. Considering our limited standard of review on this issue, the ages of the children, and the fact that the court’s judgment provided for significant periods of visitation, we cannot find the trial court in error on this point.
 

 VIII.
 

 The wife also argues that the trial court erred by prohibiting her from “consum[ing] or be[ing] under the influence of ... stimulants” while visiting with the parties’ children. The wife first con
 
 *586
 
 tends that the judgment is unclear as to whether the ban applies to her prescription medication. “[I]f the terms of a judgment are not ambiguous, they should be given their usual and ordinary meaning.”
 
 Moore v. Graham,
 
 590 So.2d 293, 295 (Ala. Civ.App.1991). We conclude that the ordinary meaning of the word “stimulants” includes prescription medication that has a stimulating effect. Therefore, we find no need to remand the case for the trial court to further define the term “stimulants.”
 

 The wife next contends that the trial court exceeded its discretion in prohibiting her from using her prescription medication while visiting with the parties’ children. The wife argues that she is given a “Hob-son’s choice” of either complying with her doctor’s advice, thereby violating the trial court’s judgment and jeopardizing her visitation rights, or endangering her health by complying with the judgment. The record reveals that the wife had overdosed on prescription medication on one occasion and had used her son’s prescription medication without authorization. The trial court did not err by concluding that the children’s best interests would be served by restricting the wife’s use of stimulating prescription medication.
 

 However, “[t]he trial court is entrusted to balance the rights of the parents with the child’s best interests to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case.”
 
 Nauditt v. Haddock,
 
 882 So.2d 364, 367 (Ala.Civ.App.2003). The danger to the children was not from the wife’s proper use of prescription medication, but from her misuse or abuse of prescription medication. The record is devoid of any evidence indicating that the wife acts erratically or irresponsibly while using her medication as prescribed. We also note that the medication was prescribed to combat the wife’s mental problems, so it may actually be harmful to the children to visit with the wife while she is not taking her prescription medication. By totally prohibiting the wife from using any stimulants, including her prescription medication, the restriction fashioned by the trial court is overly broad. The trial court should have qualified its restriction by stating that the wife could not use stimulants “other than as prescribed by her physicians.” We, therefore, reverse that portion of the trial court’s judgment and remand the cause for the trial court to qualify the visitation restriction in the judgment.
 

 IX.
 

 The wife’s final argument is that the trial court erred by failing to require the husband to pay all the wife’s attorney fees and litigation expenses.
 

 “Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed.
 
 Thompson v. Thompson,
 
 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’
 
 Figures v. Figures,
 
 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee.
 
 Taylor v. Taylor,
 
 486 So.2d 1294 (Ala.Civ.App.1986).”
 

 Glover v. Glover,
 
 678 So.2d 174, 176 (Ala. Civ.App.1996). In the present case, the trial court ordered the husband to pay
 
 *587
 
 $88,000 toward the wife’s attorney fees. The wife argues that the court should have ordered the husband to pay the entire attorney fee of $125,000 and her litigation expenses of approximately $18,000. Considering the factors that the trial court must consider in its decision to award attorney fees, especially considering the wife’s ability to pay a portion of her own fees, we cannot find any error in that aspect of the trial court’s judgment.
 

 Cross-Appeal
 

 The sole issue presented by the husband in his cross-appeal is whether the trial court exceeded its discretion in failing to order the wife to pay child support.
 

 “ ‘Matters related to child support ... rest soundly within the trial court’s discretion and will not be disturbed on appeal, absent a showing that the ruling is unsupported by the evidence and thus is plainly and palpably wrong.’ ”
 
 Volovecky v. Hoffman,
 
 903 So.2d 844, 847 (Ala.Civ. App.2004) (quoting
 
 Jackson v. Jackson,
 
 777 So.2d 155, 158 (Ala.Civ.App.2000)).
 

 “When the [parties’] combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce,
 
 and
 
 must reasonably relate to the obli-gor’s ability to pay for those needs.... To avoid a finding of an abuse of discretion on appeal, a trial court’s judgment of child support must satisfy both prongs.”
 

 Dyas v. Dyas,
 
 683 So.2d 971, 973-74 (Ala. Civ.App.1995) (footnote omitted).
 

 In the present case, the wife is unemployed and had been unemployed for most of the parties’ marriage. The trial court reserved the issue of child support because of the wife’s unemployment.
 
 [5]
 
 However, the law does not grant the trial court the discretion to simply reserve a child-support determination based solely on the fact of a parent’s unemployment at the time of the entry of the judgment.
 
 Parker v. Parker,
 
 946 So.2d 480, 487-89 (Ala.Civ.App.2006).
 

 Despite her unemployment, the wife had investment income of $2,633 per month that she reported on her CS-41 form. Taken together with the husband’s monthly income, it is clear that the parties’ combined monthly gross income exceeds $10,000 per month. In such cases, Rule 32(C), Ala. R. Jud. Admin., provides that “[t]he court may use its discretion in determining child support .... ” “[A] trial court’s discretion is not unbridled and ... the amount of child support awarded must relate to the reasonable and necessary needs of the children as well as to the ability of the obligor to pay for those needs.”
 
 Dyas,
 
 683 So.2d at 973. We reverse the trial court’s judgment as to this issue, and we remand the case. We instruct the trial court on remand to enter a child-support order based on the appropriate criteria.
 

 Conclusion
 

 Based on the foregoing, we reverse the trial court’s judgment as to the restriction on the wife’s visitation and remand the cause for the trial court to enter a judgment in accordance with this opinion. We affirm the trial court’s judgment as to all the other issues raised in the wife’s appeal.
 
 *588
 
 As to the husband’s cross-appeal, we reverse that part of the judgment reserving the child-support issue and we remand the cause to the trial court for further proceedings consistent with this opinion.
 

 The wife’s request for the award of an attorney fee on appeal is denied.
 

 APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 CROSS-APPEAL — REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Because not all the information was available from the year 2006, our analysis focuses solely on the 2005 information.
 

 [2]
 

 . Throughout the record, this entity appears to be referred to by various names, including: “New South Federal Savings Bank,” "New South Bancshares, Inc.,” "New South Banc-shares, LLC,” and "New South Bank.” In its judgment, the trial court refers to tills entity as "New South Bank Shares Inc.” In their appellate briefs, the parties agree that one of their primary sources of income was their ownership interests in "New South Federal Savings Bank”; therefore, for purposes of this opinion, we will refer to this entity as "New South Federal Savings Bank.”
 

 [3]
 

 . This amount is approximate because the tax consequences of the decreased income due to the award of property to the wife and the tax deduction for payment of alimony are not factored into the calculation.
 

 [4]
 

 . This amount does not take into account the tax consequences to the wife resulting from the award of periodic alimony.
 

 [5]
 

 . In
 
 Parker v. Parker,
 
 946 So.2d 480 (Ala.Civ. App.2006), we held that a judgment that reserved the issue of child support indefinitely, and not pending the occurrence of a specific event, is a final judgment.