Herman Buford COWART, Jr.

v.

Debra BURNHAM.

2140112.

Court of Civil Appeals of Alabama.

Oct. 9, 2015.

Rehearing Denied Dec. 4, 2015.

William K. Bradford of Bradford Ladner, LLP, Mountain Brook, for appellant.

Katie M. Crow of Gullage & Tickal, LLP, Opelika, for appellee.

PITTMAN, Judge.

AFFIRMED. NO OPINION.

See Rule 53(a)(1) and (a)(2)(F), Ala. R.App. P.; *M.F. v. W.W.*, 144 So.3d 366, 368 (Ala.Civ.App.2013); *Hensley v. Kanizai*, 143 So.3d 186, 197 (Ala.Civ.App.2013); *Lackey v. Lackey*, 18 So.3d 393, 402 (Ala. Civ.App.2009); *M.R.D. v. T.D.*, 989 So.2d 1111, 1114 (Ala.Civ.App.2008); *West v. Rambo*, 786 So.2d 1138, 1140 (Ala.Civ.App. 2000); *Cole v. Cole*, 507 So.2d 1333, 1335 (Ala.Civ.App.1987); *Robbins v. Robbins*, 460 So.2d 1355, 1356 (Ala.Civ.App.1984); and *Laurent v. Laurent*, 434 So.2d 266, 268 (Ala.Civ.App.1983).

THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur.

MOORE, J., concurs in part and dissents in part, with writing.

MOORE, Judge, concurring in part and dissenting in part.

This appeal involves a postdivorce custody and visitation dispute. I concur that, under the authority of *Gallant v. Gallant*, 184 So.3d 387, 405 (Ala.Civ.App.2014), the judgment of the Lee Circuit Court ("the trial court") should be affirmed insofar as it awarded Debra Burnham ("the mother") sole legal custody of T.C. ("the child"). I also concur that the trial court did not err in affording the mother complete control over the child's cellular-telephone usage; in ordering Herman Buford Cowart, Jr. ("the father"), to attend counseling in Lee County and to pay the costs associated with the counseling for the parties and the child; in finding the father in contempt; and in ordering the father to pay $5,000 toward the mother's attorney's fees. Because I believe the trial court erred to reversal in suspending the father's visitation and in delegating its judicial authority over visitation restrictions, I respectfully dissent from the affirmance of the trial court's judgment on those issues.

I. *Suspension of Visitation*

Upon finding that the father had psychologically abused the child by intentionally alienating the child from the mother, the trial court entered a judgment suspending visitation between the father and the child for 12 months, "except that the mother shall allow visitation with the father as per the recommendation of [the child's] psychologist after consultation with the parent's counselor." The father moved the trial court to alter, amend, or vacate that aspect of its judgment. The trial court denied the father's postjudgment motion.

On appeal, the father initially argues that the evidence does not support the drastic measure of completely suspending his visitation for one year. A trial court exercises a great deal of discretion in fashioning a visitation award that serves the best interest of the child. *C.O. v. S.O.*, 85 So.3d 460 (Ala.Civ.App.2011). However, a trial court's discretion in awarding

visitation "should be exercised with a view towards the policy of preserving relationships between parents and children whenever possible." *M.R.D. v. T.D.*, 989 So.2d 1111, 1118 (Ala.Civ.App.2008). A trial court may restrict visitation to protect children from conduct, conditions, or circumstances surrounding their noncustodial parent that endanger the children's health, safety, or well-being. *Ex parte Thompson*, 51 So.3d 265, 272 (Ala.2010).

> "Once the trial court has identified a particular danger to the health, safety, or welfare of the child, and the record establishes that some restriction on visitation is necessary to protect the child, it must mold its visitation order to target that specific concern. The trial court has broad discretion in fashioning an appropriate visitation order; however, it exceeds its discretion when it selects an overly broad restriction that does more than address a particular concern and thereby unduly infringes upon the parent-child relationship."

*Jackson v. Jackson*, 999 So.2d 488, 494–95 (Ala.Civ.App.2007) (per Moore, J., with three Judges concurring in the result as to the visitation issue) (citations omitted); *see also Pratt v. Pratt*, 56 So.3d 638, 641 (Ala. Civ.App.2010).

The most onerous restriction a trial court can impose on visitation is one that completely cuts off contact between a child and his or her noncustodial parent. In such cases, the restriction eliminates the ability of a parent to engage in any meaningful relationship with his or her child. *See Speakman v. Speakman*, 627 So.2d 963, 965 (Ala.Civ.App.1993). In *M.R.D.*, 989 So.2d at 1114, this court held that such an extreme visitation restriction must be based upon evidence that "would lead the trial court to be reasonably certain that the termination of visitation is essential to protect the child's best interests."

This court did not fashion the standard espoused in *M.R.D.* to address only indefinite or long-term suspensions of visitation. In *M.R.D.*, we recognized that the associational rights of noncustodial parents and children demand that *any* suspension of their interpersonal contact be strictly reviewed. *M.R.D.*, 989 So.2d at 1114 ("Thus, notwithstanding the discretionary role of our learned trial judges, this court will continue to carefully scrutinize judgments divesting parents of *all* visitation rights with their children."). When a trial court enters a judgment interrupting the contact between a noncustodial parent and his or her child, it interferes with fundamental family rights deemed basic to a well-ordered society. *Jackson*, 999 So.2d at 494. That governmental interference, however "brief," may be justified only for the most compelling of reasons and, then, only when no less drastic alternative can be employed. As I explained in my opinion concurring in the result in *Y.N. v. Jefferson County Department of Human Resources*, 67 So.3d 76, 86 (Ala.Civ.App.2011), based on the *M.R.D.* standard, "if the danger to the child from visitation can be ameliorated through some lesser restriction, that restriction should be used instead of a total denial of visitation."

The father argues that the evidence fails to disclose any danger to the child's health, safety, or well-being that would justify the suspension of his visitation. The trial court determined that the father was harming the child through a long-standing campaign designed to alienate the child from the mother. The father maintains that the mother's claim of parental alienation is "unfounded." However, the evidence, especially the testimony of the child, proved with reasonable certainty that the child views the mother in an almost completely negative light. Dr. Bridget Smith, a court-appointed psycholo-

gist who had analyzed the child over a dozen times, attributed the child's one-sided perception to parental alienation. The trial court received evidence, mainly consisting of a series of tape recordings, in which the father repeatedly denigrated and disparaged the mother and her parenting skills and decisions. The trial court personally observed the father when he tried to explain away those statements, expressly finding the father's efforts to excuse his manipulative conduct as lacking any credibility. From the testimony of Dr. Smith, the trial court could have been reasonably certain that the father was intentionally and systematically harming the relationship between the mother and the child to the emotional and psychological detriment of the child. *See C.J.L. v. M.W.B.,* 879 So.2d 1169 (Ala.Civ.App.2003) (explaining harmful impact of parental alienation).

In ruling on the father's postjudgment motion, the trial court indicated that it had suspended the father's visitation "to give time for the child to recover from the brainwashing he has endured and to remove some of the tools the father had used to do it." In *Cole v. Cole,* 507 So.2d 1333 (Ala.Civ.App.1987), this court affirmed a judgment suspending a father's visitation for 10 months based on evidence indicating that the father had alienated his child from the mother and had taught the child to lie, steal, and deceive and to be disrespectful to authority, damaging the child's mental and emotional welfare. Unlike in that case, in this case the trial court received the following undisputed expert testimony from Dr. Smith:

"What the research shows is that once there is a permanent decision made by the Court, that generally the symptoms of alienation decrease significantly as the conflict is, at least in the short-term, resolved because a decision has been made. So in most cases, you would hope

that both parents would be able to have—say [the mother] was given custod[y]. You would hope that the father would have liberal visitation. But there would still have to be a monitoring of alienation. And if that doesn't decrease and it continues and [the child] continues to be resistant to working on his relationship with his mother, then you still have to assess outside influences. And in that case, you have to wonder whether there is anything going on that does need to be supervised during visitation."

Dr. Smith also testified:

"Well, the standard recommendation of severe alienation is more quality time with the parent who has been alienated and family therapy, and to try what they usually refer to as, contain the alienation, making sure that the child's not being unduly influenced about negative factors.

"So in this case, he needs more quality time with his mother and more therapy with his mother. And his father needs some guidance, I believe, on setting boundaries and how, for both parents, to encourage the relationship with him. If there continues to be alienation at this level, then the recommendation generally is supervised visits with the parent who is doing the alienation."

Dr. Smith did not recommend that the trial court suspend visitation between the father and the child; instead, she stated that it was her opinion that therapy, monitoring, and supervision could be used to ameliorate the threat of continued emotional harm from the child's visitation with the father.

In *Cole,* the trial court had entered a lengthy and detailed judgment regarding the custody of the child, which this court described as a "valiant effort to avoid future problems." 507 So.2d at 1334. It

was only after the father had violated the terms of that judgment that the trial court in *Cole* suspended his visitation. In *C.O.*, *supra*, the juvenile court suspended visitation to protect the child at issue from emotional harm caused by the mother's confrontations with the grandmother, the custodian of the child. This court reversed the judgment because

> "[t]he juvenile court has available to it a number of less restrictive options for fashioning a visitation award that could adequately protect the child while promoting the relationship between the mother and the child. Those less restrictive options were not explored before the mother's visitation with the child was suspended."

*C.O.*, 85 So.3d at 466. In this case, the testimony of Dr. Smith demonstrated that less restrictive options would adequately protect the child. The trial court was not necessarily bound by Dr. Smith's opinion, but it could suspend the father's visitation only if the other evidence proved to a reasonable certainty that such an extreme restriction was *essential* to protect the child. However, nothing in the remainder of the evidence dilutes Dr. Smith's opinion or shows that the trial court could protect the child from the father's manipulation *only* by suspending visitation.

In its order denying the father's postjudgment motion, the trial court determined that it had employed a less restrictive means to protect the child by providing the father potential access to the child in less than a year if Dr. Smith determined that "it would be good for the child's progress." Our caselaw consistently holds that a trial court cannot delegate the judicial function of deciding visitation matters to a custodial parent or a third-party mental-health professional. *See, e.g., Pratt v. Pratt, supra.* The trial court evidently interpreted that caselaw as preventing a trial court only from authorizing a third party to impose restrictions on a noncustodial parent's visitation rights. However, the father should not have to petition Dr. Smith, the child's counselor, or the mother to end his visitation suspension, and the trial court erred by empowering them to decide whether prematurely ending the suspension and enlarging the father's visitation rights would serve the best interests of the child. That power to modify the suspension rests solely in the trial court. The trial court erred to reversal in delegating its power of modification.

More to the point, by providing the father an extrajudicial avenue to end his visitation suspension, the trial court did not use the most narrowly tailored means to protect the child. The trial court could have allowed supervised visitation between the father and the child with monitoring of their communications, coupled with counseling for the child and the father, or some combination thereof, which would have allowed them to continue to see one another while avoiding any parental alienation. At best, the proviso inserted in the judgment could be considered less severe than an unconditional one-year suspension, but it could hardly be described as the method of protecting the child from parental alienation *least* obtrusive to the beneficial aspects of the relationship between the father and the child. It remains that the trial court erroneously used an overly broad restriction that was not supported by sufficient evidence.

## II. *House Rules*

In its judgment, the trial court ordered the father to institute house rules formulated by the mother with the input of the parties' and the child's counselors:

> "The mother may provide house rules in writing to the father and the father shall abide by and enforce the same without any negative comments either expressed directly or by implication regarding those rules, but shall be wholly support-

ive of those rules. That being said the mother should ask that [the child's] counselor and the [parties'] counselor review such rules prior to providing them to the father for application in his home."

In *Pratt v. Pratt, supra*, the trial court entered a judgment granting a counselor the right to prepare guidelines for the supervised visitation awarded to the mother. This court reversed that judgment because the trial court had improperly delegated its judicial function of determining the visitation restrictions necessary to protect the child. In this case, the trial court received some evidence regarding the manner in which the father and the mother ran their respective households, but it did not impose any house rules designed to protect the child in its judgment, instead allowing the mother to promulgate whatever child-rearing guidelines she and the counselors deemed advisable, whether supported by the evidence or not. Moreover, the trial court ordered the father to support and follow those rules even though the trial court did not know what those rules would be. As the father argues, the trial court committed reversible error by improperly delegating its judicial duty in this regard.