**Ex parte Herman Buford COWART, Jr.**

**(In re Herman Buford Cowart, Jr.**

**v.**

**Debra Burnham).**

**1150286.**

Supreme Court of Alabama.

April 1, 2016.

William K. Bradford of Bradford Ladner, LLP, Mountain Brook, for petitioner.

BRYAN, Justice.

WRIT DENIED. NO OPINION.

STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.

MOORE, C.J., and MURDOCK, J., dissent.

MOORE, Chief Justice (dissenting).

I respectfully dissent. Based on the facts as presented in Judge Moore's special writing below and the facts submitted to this Court, I would grant the petition for a writ of certiorari filed by Herman Buford Cowart, Jr. ("the father"), to review the 12–month suspension of his visitation rights and the alleged delegation to Debra Burnham ("the mother") of judicial authority by the Lee Circuit Court ("the circuit court") in deciding visitation.

This case involves a postdivorce custody and visitation dispute. The circuit court found that the father had psychologically abused the child by intentionally alienating the child from the mother. As a result of that finding, the circuit court ordered, among other things, the suspension of the father's visitation rights for 12 months, subject to the mother's allowing visitation during that period on the recommendation of the child's psychologist after consulting with the parents' counselor. The circuit court also ordered the father to support

without question any house rules imposed by the mother on the child. *Cowart v. Burnham,* 204 So.3d 880, 880–84 (Ala.Civ. App.2015) (Moore, J., concurring in part and dissenting in part).

On appeal to the Court of Civil Appeals, the father alleged that the evidence presented, as well as prior decisions of the Court of Civil Appeals, did not support the circuit court's decision to suspend his visitation rights for a year. The father relied on the following expert testimony by Dr. Bridget Smith, the court-appointed psychologist in this case:

> " 'What the research shows is that once there is a permanent decision made by the Court, that generally *the symptoms of the alienation decreases significantly as the conflict is, at least in the short-term, resolved because a decision has been made.* So in most cases, you would hope that both parents would be able to have—say [the mother] was given custod[y]. You would hope that the father would have liberal visitation. But there would still have to be a monitoring of alienation. And if that doesn't decrease and it continues and [the child] continues to be resistant to working on his relationship with his mother, then you still have to assess outside influences. And in that case, you have to wonder whether there is anything going on that does need to be supervised during visitation.'
>
> " . . . .
>
> " '. . .[T]he standard recommendation of severe alienation is more quality time with the parent who has been alienated and family therapy, and to try [to,] what they usually refer to as, contain the alienation, making sure that the child's not being unduly influenced about negative factors.

> " 'So in this case, [the child] needs more quality time with his mother and more therapy with his mother. And his father needs some guidance, I believe, on setting boundaries and how, for both parents, to encourage the relationship with him. If there continues to be alienation at this level, then the recommendation generally is supervised visits with the parent who is doing the alienation.' "

*Cowart,* 204 So.3d at 882 (Moore, J., concurring in part and dissenting in part)(emphasis added). On appeal, the Court of Civil Appeals affirmed the decision without an opinion; Judge Moore concurred in part and dissented in part and issued a special writing. The father petitioned this Court for certiorari review, which the Court today denies.

Based on the facts in the father's petition, I believe that the father has properly asserted grounds for our review. According to *M.R.D. v. T.D.,* 989 So.2d 1111, 1118 (Ala.Civ.App.2008), a trial court's discretion in awarding visitation "should be exercised with a view towards the policy of preserving relationships between parents and children whenever possible." In addition, " '[t]he trial court is entrusted to balance the rights of the parents with the child's best interest to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case.' " *Ratliff v. Ratliff,* 5 So.3d 570, 586 (Ala.Civ.App.2008)(quoting *Nauditt v. Haddock,* 882 So.2d 364, 367 (Ala.Civ.App. 2003)). A trial court may restrict visitation to protect children from conduct, conditions, or circumstances of their noncustodial parent that endanger the children's health, safety, or well-being. *Ex parte Thompson,* 51 So.3d 265, 272 (Ala.2010). However, "if the danger to the child from visitation can be ameliorated through some lesser restriction, that restriction should be pursued instead of a total denial of

visitation." *Y.N. v. Jefferson Cty. Dep't of Human Res.,* 67 So.3d 76, 86 (Ala.Civ.App. 2011)(Moore, J., concurring in the result). See also *C.O. v. S.O.,* 85 So.3d 460, 466 (Ala.Civ.App.2011) (reversing the juvenile court's judgment suspending mother's visitation rights entirely because less restrictive measures were not explored before suspension); *Pratt v. Pratt,* 56 So.3d 638, 641 (Ala.Civ.App.2010) (holding that, in fashioning the appropriate restrictions, the trial court may not use a restriction more broad than necessary to protect the child). Thus, the circuit court in this case was required to tailor visitation rights in a less restrictive manner than a year-long total suspension if such measures were available.

Nevertheless, the circuit court suspended the father's visitation entirely, even though the expert testimony supported a less severe restriction. Dr. Smith gave a thorough analysis addressing the alienation of the mother by the father, which is the core component of the current dispute. Nowhere in her testimony did Dr. Smith suggest that the father should be prohibited from visiting the child. Rather, Dr. Smith gave the standard recommendation in severe alienation cases, which did not include suspending the father's visitation rights, even temporarily. Thus, based on what is before us, it appears there were means available to the circuit court less restrictive than a total suspension of the father's visitation rights for 12 months.

The cases cited by the Court of Civil Appeals for temporarily suspending visitation rights are distinguishable from this case. In *Cole v. Cole,* 507 So.2d 1333 (Ala.Civ.App.1987), the trial court found that the father caused great emotional and mental detriment to the child by teaching her to lie, steal, deceive, and be disrespectful to authority, thereby breaching her ties with the mother. Based on those facts,

the Court of Civil Appeals found that the trial court did not exceed its discretion when it temporarily suspended the father's visitation for 10 months. In *Robbins v. Robbins,* 560 So.2d 266 (Ala.Civ.App.1984), the Court of Civil Appeals upheld the trial court's decision to suspend the father's visitation rights for 12 months because the father, in clear disregard of the custody order granting sole custody to the mother, twice took the child away from the mother without permission. On one such occasion, the father did not return the child after visitation, but instead moved to Florida with the child, where he lived under a different name. The child was not returned to the mother until FBI agents located the father's residence.

Similarly, in *Laurent v. Laurent,* 434 So.2d 266 (Ala.Civ.App.1983), the parents were divorced, and legal custody of the child was awarded to the paternal grandparents, with the mother receiving visitation rights. When the mother petitioned the trial court to modify the custody award, the paternal grandparents petitioned to suspend the mother's visitation rights. The trial court suspended the mother's visitation rights until the hearing. During the hearing, two witnesses testified that the child, who was very difficult to control, began to calm down and to act like a different person eight weeks before the hearing, which coincided with the period during which the mother's visitation rights were suspended. The court-appointed psychiatrist recommended that visitation be suspended temporarily, that the mother and the paternal grandparents attend counseling to remove the conflicts that existed between them, and that the visitation with the mother not resume until after the child was evaluated at the end of the suspension period. After the hearing, the trial court suspended the mother's visitation rights for an additional six months.

In each case cited in the Court of Civil Appeals' no-opinion affirmance, the trial court acted upon evidence and testimony that heavily favored a suspension of visitation rights. In the present case, however, the court-appointed psychologist did not recommend that the father's visitation rights be suspended, because there were no facts to indicate that the father was acting in a manner that would harm the child.

Second, the father argued that the circuit court erred in delegating judicial authority to the mother by giving her, with the consultation of the child's psychologist, the exclusive right to control the father's 12–month visitation restriction. The court further ordered the father to enforce house rules made by the mother with the consultation of counselors for the child and the parties. In *Pratt v. Pratt*, 56 So.3d 638, 641 (Ala.Civ.App.2010), the Court of Civil Appeals stated: " ' "*The trial court* is entrusted to balance the rights of the parents with the child's best interests to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case." ' *That judicial function may not be delegated to a third party.*" (Quoting *Ratliff v. Ratliff,* 5 So.3d 570, 586 (Ala.Civ.App.2008)(final emphasis added).) If the circuit court allowed the mother and her counselor to relieve the father's suspension at the recommendation of the child's psychologist, this would give the mother the authority to modify the father's "visitation rights," which is a clear delegation of judicial authority to a third party.

In addition, the circuit court gave the mother no guidelines on how to formulate the house rules the father was to obey. Instead, the court stated only that the father had to enforce the mother's rules without question or remedy. Judge Moore noted in his special writing that the circuit court received evidence regarding the manner in which both parents ran their households, but imposed no house rules designed to protect the child. Instead, the court allowed the mother to promulgate whatever child-rearing guidelines she and her counselor deemed advisable and ordered the father to support and to follow those rules. *Cowart,* 204 So.3d at 884 (Moore, J., concurring in part and dissenting in part). This was an additional improper delegation of judicial authority.

Under the laws of Alabama, a noncustodial parent's visitation rights are to be protected. The courts have a duty to tailor the visitation rights based on the specific circumstances of each case. Although courts have, at times, suspended a noncustodial parent's visitation rights, they have done so when the child's health, safety, or well-being is endangered by the noncustodial parent. I am not convinced that such circumstances existed in the present case. Therefore, I respectfully dissent.