CRAWLEY, Judge.
R.L.W. (“the husband”) and C.L.W. (“the wife”) were divorced in March 1992, after 28 years of marriage. Pursuant to the divorce judgment, the husband was required to pay the wife $6,500 in monthly periodic alimony. In September 2001, the wife filed a petition for a rule nisi, alleging that the husband was in arrears in paying periodic alimony. Specifically, the wife claimed that the husband had failed to pay the total monthly amount of periodic alimony since November 2000, and, as a result, the husband had accumulated an ar-rearage totaling $22,900. The husband cross-claimed, requesting that the trial court terminate his periodic-alimony obligation or grant him other, different, or *877 farther relief based on the changed circumstance that his annual salary had decreased by approximately $400,000 since the divorce. Following an ore tenus hearing in September 2002, the trial court reduced the husband’s alimony obligation to $3,000 per month. The husband appeals, contending that the trial court abused its discretion by failing to terminate his alimony obligation.
A decision to modify an award of periodic alimony is within the sound discretion of the trial court. Bush v. Bush, 784 So.2d 299, 300 (Ala.Civ.App.2000). The trial court’s judgment on this matter is presumed correct and will not be reversed unless it is unsupported by the evidence or is otherwise plainly and palpably wrong. Posey v. Posey, 634 So.2d 571, 572 (Ala.Civ.App.1994). A periodic-alimony obligation may be modified only upon a showing of a material change of circumstances that has occurred since the last award was made. Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995). In making this determination, “[t]he trial court may consider several factors, including the earning capacity of each spouse, the recipient’s needs and the payor’s ability to meet those needs, and the estate of each spouse.” Id.
The record indicates that at the time of the divorce the husband was a neurosurgeon earning $597,743 per year. During the first five years of their marriage, the wife held a few jobs and was employed as the office manager in the husband’s solo medical practice. The wife spent the remainder of their marriage at home with the parties’ three children.[1] She has not worked since the divorce.
The wife was 61 years old at the time of the hearing. During the modification hearing, the wife testified that her medical condition has prevented her from obtaining employment. The wife explained that she has cerebrovascular disease and coronary artery disease and that she underwent heart-bypass surgery in 1989. In addition, the wife suffers from arthritis in her neck, back, hands, and hip. Her cartilage has completely deteriorated from the third cervical vertebrae to the first thoracic vertebrae, and the first thoracic vertebrae' has been fused. The wife further testified that at the time of the hearing she was under the care of a physician and that she took numerous prescription medications that cost $230 per month. After being removed from the husband’s insurance coverage, the wife, as a result of her poor medical condition, was unable to obtain health insurance.[2] By the time of the hearing, she had incurred $24,884.66 in medical expenses.
The wife testified that because she had been unable to work her only sources of income since the divorce have been alimony and interest income derived from accounts and investments established with the money she received through the divorce judgment.[3] The wife testified that *878 she has money-market accounts worth a total of $29,502, an individual-retirement account worth $20,000, and stocks worth approximately $12,000. The wife does not receive Social Security or Medicare benefits.
The record indicates that the wife’s living expenses were $44,851 in 1999, 46,-566.10 in 2000, and $66,587.77 in 2001. The husband argues that those expenses included expenses for the support and maintenance of the parties’ adult daughter who lives with the wife. The wife testified that the daughter has had medical problems since she was a child. The daughter suffers from depression and has attempted suicide several times. The daughter also has developed an autoimmune disease. As a result of her medical condition, the daughter took a medical leave of absence from her job and has been unable to obtain employment since that time. The wife, however, calculated the daughter’s expenses separately from her own expenses. The daughter’s expenses totaled $3,107 in 2001.
At the time of the hearing, the husband was 67 years old. The husband testified that in September 2000 he had attempted suicide by taking an overdose of prescription medication. Following his suicide attempt, the State Medical Licensing Board prohibited the husband from performing operations, limited him to working 36 hours per week at the medical clinic, and prohibited him from taking night or weekend calls from the hospital. As a result, the husband’s annual salary declined to $180,000 by October 2000 and to $100,000 by July 2001. The husband stated that he had lost some of his dexterity and cognitive ability. The State Medical Licensing Board explained that the husband would have to be retested to determine whether the restrictions on what he could do and how many hours he could work could be lifted. The husband testified, however, that he was concerned about his ability to continue working at all if he was retested. According to the husband, he is unable to do anything else with his medical group to earn additional income. In addition to his salary, the husband receives Social Security benefits. He also has a 15% vested interest in a piece of real property worth between $45,000 and $50,000, a retirement plan worth approximately $25,000 to $80,000, and $250,000 in term life insurance. The husband’s current wife, a real estate agent, earns approximately $25,000 to $35,000 annually in commission income.
James Butler, the husband’s certified public accountant, testified that after the suicide attempt the husband went into arrears in his.alimony payments.[4] In order to satisfy the alimony arrearage, the husband’s salary and a bank trust account were garnished. The record indicates that the husband’s wages were garnished approximately $1,678 per month. Butler testified that after the salary garnishment the husband’s net monthly income, which included Social Security benefits, was $5,595.88. From that account, Butler payed the husband’s monthly living expenses which totaled approximately $6,400. Butler testified that after these expenses were paid each month, the husband had approximately a $795 monthly deficit in the account managed by Butler’s firm. In addition, Butler also explained that because the husband could not afford to have his federal income taxes withheld, he was also accruing a tax liability to the Internal Revenue Service (“the IRS”) in the amount of $1,750 to $2,000 per month. Butler testified that the husband owed the IRS $25,000 to $30,000 for federal income taxes in 2001 alone. At the hearing, the wife did not dispute that the husband had *879 a deficit each month. The following table lists the husband’s monthly income and his monthly expenses:
¡>5,595.88 net income
■ 2,400.00 alimony[5]
• 1,261.00 mortgage payment
■ 1,000.00 payment on an equity line on the home
• 285.00 car insurance
■ 445.00 homeowner’s insurance
• 500.00 husband’s allowance
- 500.00 payment to Butler’s firm
-1,750.00 federal income tax liability[6]
($2,545.12) deficit
Based on the evidence presented, the husband has insufficient funds to meet his monthly obligations. Even taking the lowest estimate of the husband’s monthly tax liability and an alimony payment of only $2,400, the husband has a $2,545 monthly deficit. His expenses clearly exceed his monthly income. Moreover, based on the husband’s age, medical condition, and the restrictions placed on his medical license, it does not appear that his salary will substantially increase in the future. Therefore, we conclude that the award of $3,000 a month in periodic alimony cripples the husband financially and should be reversed.
On remand, we instruct the trial court to reconsider the evidence already submitted to determine whether it can fashion a periodic-alimony award to the wife that will not financially cripple the husband.
The wife’s request for an attorney fee on appeal is denied.
REVERSED AND REMANDED.
YATES, P.J., and PITTMAN, J., concur.
THOMPSON and MURDOCK, JJ., dissent.

. At the time of the modification hearing, the parties’ children were ages 32, 31, and 29.

. At the hearing, there was a dispute as to whether the language in the divorce judgment required the husband to maintain health insurance on the wife after leaving his employment as a sole practitioner. The divorce judgment required the husband to maintain the wife on his "presently existing P.A. health insurance plan.” The wife was covered by the plan until 1996, when the husband left his solo practice and joined a medical group. The trial court determined that the wife was not entitled to coverage under the husband’s new plan.

.The wife’s 2001 tax return reflects that the wife received periodic alimony of $35,250 and interest income of $2,030. The wife's 2000 tax return reflects that she received periodic alimony of $66,000 and interest income of $5,270.

. At a hearing on May 7, 2002, the parties stipulated that the husband owed the wife $58,000 in periodic alimony arrearage. The amount of the arrearage at the time of the modification hearing was $22,000.

. It appears that the husband paid the wife $2,400 in alimony in an attempt to avoid falling further behind in the amount due to the wife.

. We have used the lowest estimate of the husband’s monthly tax liability.