MOORE, Judge.
 

 Mandy Nicole Cleveland (“the mother”) appeals from a judgment of the Marshall Circuit Court (“the trial court”) divorcing her from Darrell Adam Cleveland (“the father”). We affirm in part and reverse in part.
 

 Following an ore tenus hearing, the trial court entered a judgment divorcing the parties on April 17, 2008. In that judgment, the trial court awarded the parties’ joint legal custody of their two minor children. In regard to the oldest child, a son born on February 16, 2005, the trial court ordered that the parties would rotate physical custody on an alternating weekly basis. As to the youngest child, a daughter born on January 16, 2008, the trial court ordered as follows:
 

 “2. Unless the parties agree otherwise, they shall rotate physical custody and visitation as follows:
 

 [[Image here]]
 

 “b. Concerning [the daughter], until the child reaches one year of age, the father may visit with the child as follows: Each Saturday the father has physical custody of the child’s sibling from 10:00 a.m. until 6:00 p.m., Father’s Day from 10:00 a.m. until 6:00 p.m., and Christmas Day from 10:00 a.m. until 6:00 p.m.
 

 
 *952
 
 “c. Further concerning [the daughter], when the child reaches one year of age, said child shall go on the same joint custody rotation as said child’s sibling.”
 

 The judgment further required the father to pay $260.84 per month as child support to the mother and required the mother to maintain medical insurance on the children.
 

 In this appeal, the mother ai'gues that the trial court erred in awarding the parties’ joint legal custody of the children, in awarding joint physical custody of the son, in providing that the physical custody of the daughter would automatically transform into joint physical custody when the daughter turned one year old, in failing to establish a complete joint-custody plan in accordance with Ala.Code 1975, § 30-3-153, and in deviating from the guidelines for child support established in Rule 32, Ala. R. Jud. Admin., without providing an explanation therefor.
 

 With respect to the clause of the divorce judgment divesting the mother of sole physical custody of the daughter when she reaches her first birthday, we agree that the judgment should be reversed. Alabama law forbids automatic modification clauses that change physical custody of a child based on future contingencies.
 
 See Hovater v. Hovater,
 
 577 So.2d 461 (Ala.Civ.App.1990); and
 
 Korn v. Korn,
 
 867 So.2d 338 (Ala.Civ.App.2003). Once a trial court awards physical custody of a child to one parent, the trial court may change that award based only on proof that, due to a material change of circumstances, the change would materially promote the best interests of the child and would more than offset the inherent disruption in the life of the child.
 
 See Ex parte McLendon,
 
 455 So.2d 863, 865-66 (Ala.1984). A provision automatically changing custody of the child based on some future event improperly relieves the noncustodial parent of his or her burden of satisfying the
 
 McLendon
 
 standard and can only be “premised on a mere speculation of what the best interests of the children may be at a future date.”
 
 Hovater,
 
 577 So.2d at 463.
 

 In one recent case, we simply held that an automatic modification clause was void, without reversing, the judgment.
 
 See Daugherty v. Daugherty,
 
 993 So.2d 8, 13 (Ala.Civ.App.2008) (holding that clause divesting mother of custody of children in the event mother relocated from the children’s school district “was of no effect”). In this case, however, we cannot simply hold that the automatic modification clause is void because, unlike in
 
 Daugherty,
 
 it is not clear which custodial arrangement— sole custody or joint custody — would serve the best interests of the daughter. Therefore, we reverse that portion of the trial court’s judgment containing the automatic modification clause and remand the case with instructions for the trial court to vacate the automatic modification clause and to determine the custodial arrangement that currently serves the best interests of the daughter.
 

 With regard to the award of joint legal custody of the children, we begin by acknowledging the legislative declaration on the subject:
 

 “It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage.... ”
 

 Ala.Code 1975, § 30-3-150. Pursuant to that policy, Ala.Code 1975, § 30-3-152, requires trial courts to consider in every divorce case whether awarding joint custo
 
 *953
 
 dy will serve the best interests of the child. In making that determination, trial courts
 

 “shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:
 

 “(1) The agreement or lack of agreement of the parents on joint custody.
 

 “(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.
 

 “(B) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.
 

 “(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.
 

 “(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody.”
 

 Ala.Code 1975, § 30-3-152(a).
 

 The mother argues primarily that the trial court erred in awarding joint legal custody because of the history of domestic abuse and hostility between the parties. In addition to § 30-3-152(a)(4), which requires consideration of any history of or potential for child or spousal abuse, Ala. Code 1975, § 30-3-131, provides:
 

 “In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.”
 

 The mother maintains that the trial court ignored the law by awarding joint legal custody to the parties although the evidence established that the father had perpetrated domestic violence against the mother.
 

 The mother testified that the father had injured the son when he was six to eight months old during a struggle to wrestle the child from the arms of the mother. The parties also testified that the father had flipped over a kitchen table, which had some plates and glassware on it, during an argument with the mother; the mother testified that, during that incident, she had had to shield the son’s face so that nothing would “get on him.” Both parties additionally testified at length regarding an incident in January 2007 during which the mother received injuries when, according to the mother, her arm became stuck in the steering wheel of the father’s truck while she was attempting to stop the father from driving away from their premises. The January 2007 incident caused the mother to file a protection-from-abuse (“PFA”) petition,
 
 see
 
 Ala.Code 1975, § 30-5-1 et seq., which she later dismissed.
 
 [1]
 

 In its judgment, the trial court did not make written findings of fact regarding the mother’s allegations of domestic violence. “ ‘[Wjhere the trial court does not make specific findings of fact, it will be assumed that the trial court made those findings that were necessary to support its
 
 *954
 
 judgment, unless the findings would be clearly erroneous.’ ”
 
 Mayer v. Mayer,
 
 628 So.2d 744, 746 (Ala.Civ.App.1993) (quoting
 
 Ex parte Walters,
 
 580 So.2d 1352, 1354 (Ala.1991)). Although the mother contends that she proved that the father had committed domestic violence on the three occasions cited above, the father’s testimony provided sometimes overlapping but decidedly different versions of the facts surrounding those events. Based on the award of joint custody,
 

 “we must assume that the trial court found either that the alleged acts of domestic or family violence did not occur, or that the acts did not constitute domestic or family violence, or that the father had rebutted the presumption that custody of the child should be placed with the mother by, among other things, proving that the acts of domestic violence had not negatively impacted the child.”
 

 McCormick v. Ethridge,
 
 15 So.3d 524, 531 (Ala.Civ.App.2008) (citing
 
 McClelland v. McClelland,
 
 841 So.2d 1264, 1268 (Ala.Civ.App.2002)), cert. denied, 15 So.3d 532 (Ala.2009). Because in ore tenus proceedings we presume that implied factual findings based on conflicting evidence are correct,
 
 see C.M.M. v. S.F.,
 
 975 So.2d 975, 980 (Ala.Civ.App.2007), and because the record contains sufficient evidence disputing the mother’s version of events, we “conclude that the trial court was authorized to make some or all of those findings [listed in
 
 McCormick
 
 ] in relation to each alleged episode of domestic violence.”
 
 McCormick,
 
 15 So.3d at 531.
 

 The mother next argues that the hostility of the parties as displayed in the three episodes cited above prevent the parties from amicably exercising joint custody. However, on February 6, 2007, shortly after the mother filed for a divorce, the parties entered into an agreement to share joint custody of the son; the trial court adopted that agreement in its pen-dente lite order. Both the mother and the father testified that, during the 15 months they had been sharing custody of the son, they had been able to work out holiday visitation amicably and no major issues had arisen that they had not been able to work out between themselves. The record does not support the mother’s assertions on appeal that the parties are so hostile toward each other that the award of joint legal custody is unworkable.
 

 The mother next argues that the trial court erred in awarding joint physical custody of the son. In
 
 Steed v. Steed,
 
 877 So.2d 602, 604 (Ala.Civ.App.2003), this court stated:
 

 “The determination of an award of child custody is within the sound discretion of the trial court.
 
 Pierce v. Helka,
 
 634 So.2d 1031, 1032 (Ala.Civ.App.1994). A trial court’s custody determination following the presentation of ore tenus evidence is presumed correct, and that judgment will not be set aside on appeal absent a finding that the trial court abused its discretion or that its determination is so unsupported by the evidence as to be plainly and palpably wrong.
 
 Pierce v. Helka,
 
 supra.”
 

 The mother maintains that the joint-physical-custody award is inappropriate because of the father’s work schedule. The father testified that he typically works from 5:00 or 6:00 a.m. until either 3:00 p.m. or 7:00 p.m., five days a week. He stated that his work requires him to travel to Birmingham, Mississippi, and Tennessee, and that his work sometimes requires him to stay out of town overnight. The father testified that he resides with his mother (“the paternal grandmother”), that she cares for the son when he is away, that the son has his own room at the paternal grandmother’s house, and that the parties’
 
 *955
 
 daughter will also have her own room. The father testified that he plans to return to college and that, when he does, he will take on-line classes, which will allow him to stay at home with the children. The mother argues that the trial court should not have awarded the parties joint physical custody of the son because, she says, in
 
 Bryant v. Bryant,
 
 739 So.2d 53 (Ala.Civ.App.1999), this court affirmed a judgment denying joint custody because “the nature of the husband’s employment prevents him from being in town during the week.” 739 So.2d at 56. The mother reads too much into that statement. Just because a parent’s employment prevents that parent from being in town on occasions does not make an award of joint physical custody plainly and palpably wrong in every case. The trial court evidently concluded that the father compensated for his occasional absences by providing the adequate substitute care of the paternal grandmother and that an award of joint physical custody still served the best interests of the son.
 

 The mother next argues that the father, who now resides in Horton, which is approximately 30 miles from the mother’s house in Guntersville, lives too far away to make joint physical custody feasible.
 
 See
 
 Ala.Code 1975, § 30-3-152(a)(5) (requiring court to consider geographical proximity of parents when deciding whether to award joint physical custody). The mother has not, however, presented evidence indicating that the parties’ geographic distance has created a problem for them as it relates to their exercise of joint physical custody of the son. Again, both parties testified that they had been able to arrange holiday visitation and to address other issues relating to the custody of the son amicably. We conclude, therefore, that the trial court’s award of joint physical custody of the son to the parties is not unsupported by the evidence so as to be plainly and palpably wrong.
 

 The mother next argues that the trial court failed to implement a joint-custody plan in accordance with Ala.Code 1975, § 30-3-153.
 
 [2]
 
 To a large extent, the mother has waived this argument because she did not raise it in the trial court. “The oft-quoted and long-standing rule is that an appellate court may not consider an issue raised for the first time on appeal.”
 
 D.A. v. Calhoun County Dep’t of Human Res.,
 
 976 So.2d 502, 504 (Ala.Civ.App.2007). However, in her postjudgment motion the mother did argue that the trial court had failed to determine which parent would be designated as the custodial parent for purposes of enrolling the children in school. The trial court addressed that issue in its postjudgment order by designating the mother as the party having
 
 *956
 
 primary authority over the academic activities of the children. We interpret that provision as designating the mother as the custodial parent for the purpose of enrolling the children in school. Hence, we find no error requiring reversal as to this issue.
 

 The mother last argues that the trial court’s award of child support is due to be reversed because, she says, the award of $260.84 per month deviates from the child-support guidelines established in Rule 32, Ala. R. Jud. Admin.
 
 [3]
 
 Based on the judgment, the parties have split physical custody of the children, with the mother having sole physical custody of the daughter for one year and the parties sharing joint physical custody of the son. Rule 82(B)(9) covers split-custody arrangements, but no provision of Rule 32 covers joint-physical-custody arrangements. The Comment to Rule 32 clarifies that the trial court may deviate from the Rule 32 child-support guidelines in joint-legal and “shared-physical-custody” situations; however, the trial court must specify and explain its reasons for the deviation.
 
 See
 
 Comment, Rule 32, Ala. R. Jud. Admin. Because we are reversing the trial court’s judgment for it to reconsider its custody award regarding the daughter, we instruct the trial court, once it reforms the judgment, to refashion its award of child support and to explain any deviation from the child-support guidelines.
 

 Based on the foregoing, we affirm those portions of the trial court’s judgment awarding the parties joint legal custody of the children, awarding the parties joint physical custody of the son, and designating the mother as the custodial parent for academic purposes. We reverse those portions of the trial court’s judgment regarding the custody of the daughter and the award of child support and remand the cause for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 THOMPSON, P.J., concurs in the result, without writing.
 

 [1]
 

 . The mother’s PFA petition does not appear in the record, and there is no evidence indicating that an order was entered either granting or denying the mother's petition. Although an agreement between die parties refers to the mother's dismissing her PFA "order,” we instead refer to the parties’ agreeing that the mother's PFA "petition” would be dismissed.
 

 [2]
 

 . Section 30-3-153 provides:
 

 “(a) In order to implement joint custody, the court shall require the parents to submit, as part of their agreement, provisions covering matters relevant to the care and custody of the child, including, but not limited to, all of the following:
 

 ‘'(1) The care and education of the child.
 

 "(2) The medical and dental care of the child.
 

 “(3) Holidays and vacations.
 

 "(4) Child support.
 

 "(5) Other necessary factors that affect the physical or emotional health and well-being of the child.
 

 "(6) Designating the parent possessing primary authority and responsibility regarding involvement of the minor child in academic, religious, civic, cultural, athletic, and other activities, and in medical and dental care if the parents are unable to agree on these decisions. The exercise of this primary authority is not intended to negate the responsibility of the parties to notify and communicate with each other as provided in this article.
 

 “(b) If the parties are unable to reach an agreement as to the provisions in subsection (a), the court shall set the plan.”
 

 [3]
 

 . By order dated November 19, 2008, the Alabama Supreme Court amended Rule 32, Ala. R. Jud. Admin., including the child-support guidelines, effective January 1, 2009. By order dated February 25, 2009, the Alabama Supreme Court amended Rule 32(A)(4) and Rule 32(B)(7), Ala. R. Jud. Admin., effective March 1, 2009. Those amendments are not applicable in this case.