PITTMAN, Judge.
Wendell Keith Alexander (“the husband”) appeals from a judgment divorcing him from Charlene J. Alexander (“the wife”) that, among other things, awarded custody of the parties’ only child to the wife, divided the marital property, and awarded the wife an attorney’s fee in the amount of $7,500.
At the time the parties separated in September 2007, they had been married for over 18 years. In December 2007, the husband filed a complaint seeking, among other things, a divorce from the wife and joint custody of the parties’ minor child. The wife answered the husband’s complaint and filed a counterclaim seeking sole custody of the child, periodic alimony, child support, and attorney’s fees. Subsequently, the wife filed a motion seeking penden-te lite child support and alimony. In June 2008, the trial court awarded the wife pen-dente lite child support and ordered the husband to make the wife’s motor-vehicle-loan payments and to maintain automobile insurance on the wife’s vehicle as temporary alimony. During the pendency of the divorce action, the marital residence was sold and the proceeds of $3,033 plus $1,424 in escrow funds were paid into the court for later distribution.
In February 2009, the trial court conducted an ore tenus proceeding during which the parties and the husband’s sister testified. The husband testified that he was almost 46 years old,[1] that he had served throughout the marriage in the United States Coast Guard, and that he had retired with 20 years of service in September 2008; he was receiving retirement benefits in the amount of $1,450 per month. At trial, the husband stated that he was employed by G-2, Inc., as a security officer and that his biweekly salary was *961 $1,922. Although his CS-41 child-support-obligation income statement/affidavit form indicated that he earned a gross monthly income of $5,294, the husband testified that his monthly expenses of $4,388.75 left him less than $1,000 in undedicated monthly funds. The husband also stated that the parties were indebted on a camper that had been sold during the pendency of the divorce action for less than the amount of an outstanding loan secured by that vehicle; he testified that he had been making monthly payments of $169.75 toward that debt. He noted that the parties had consolidated all of their marital debts into one loan for which he was making monthly payments of $516.
The husband also testified that, after the parties had sold the marital residence, the parties’ primary remaining asset was the husband’s individual retirement account that contained $743 from the 2006 sale of the parties’ previous marital residence. He stated that the parties owned two motor vehicles: a 2004 Dodge truck primarily used by the husband (which had an outstanding loan of $11,000 with monthly payments of $500) and a 2004 GMC Envoy used primarily by the wife (which was encumbered by debt in the amount of $14,000 with monthly payments of $656). Finally, the husband stated that he had acquired a $450,000 life-insurance policy through the military under which the wife and the child were listed as beneficiaries; he testified that he intended to maintain that policy to benefit the child.
The husband testified that, because he had served 20 years in the Coast Guard, had the parties had been married 20 years the wife would have been entitled to one full year of medical benefits from the military following the divorce. He asked that the judgment of divorce not be entered until after April 29, 2009 (the parties’ 20th wedding anniversary), so that the wife could receive those benefits. The husband testified that he was willing to use the net proceeds of the sale of the marital residence to pay for orthodontic work and braces that were needed by the child.
The wife testified that she had been the primary caregiver for the child throughout the marriage; she also stated that because the husband had been deployed and absent for much of the marriage, she had handled the parties’ day-to-day financial dealings. At the time of trial, the wife was working for a local hotel as a front-desk clerk earning approximately $1,069 per month; she also worked as a substitute teacher earning approximately $235 per month. The wife also testified that she suffered from neurofibromatosis, a disorder that disrupts cell growth in the nervous system and causes tumors, usually benign, to form on nerve tissue throughout the body; the husband confirmed that he had known about the wife’s condition before they had married. The wife testified that she had not been able to find an individual health-insurance policy that she could obtain following the divorce and that it would cost approximately $190 per month to maintain her coverage through the husband’s military medical-insurance policy.
On March 12, 2009, the trial court conducted an in camera interview of the child; that interview was transcribed and included in the appellate record. Subsequently, on June 5, 2009, the trial court entered a judgment divorcing the parties based upon “a complete incompatibility of temperament and irretrievable breakdown of the marriage.”[2] In that judgment, the trial court awarded the wife “exclusive” physical and legal custody of the child, awarded *962 the husband extended alternating weekend visitation with the child, and ordered the husband to pay $636 in monthly child support. Additionally, the husband was ordered to pay monthly periodic alimony in the amount of $1,000 to the wife, and he was ordered to obtain life-insurance policies to secure the payment of both those monthly obligations. The husband was awarded one of the parties’ two motor vehicles, and the wife was awarded the other motor vehicle; however, the husband was ordered to retire the debt associated with the wife’s vehicle and to maintain insurance on that vehicle for five years. The judgment also instructed the husband to maintain medical-insurance coverage for the wife for five years, to pay for her uncovered medical expenses for five years, and to pay $7,500 toward the wife’s attorney’s fees. Following the denial of the husband’s postjudgment motion by operation of law, see Rule 59.1, Ala. R. Civ. P., the husband timely filed a notice of appeal.
The husband asserts nine discrete issues in his appellate brief, which can be combined and summarized as contentions that the trial court erred procedurally in failing to conduct a hearing on the husband’s postjudgment motion; that the trial court erred in its child-custody, child-visitation, and child-support awards; that the trial court erred in requiring the husband to secure his child-support and periodic-alimony awards by maintaining life-insurance policies; that the trial court erred in ordering the husband to provide health-insurance coverage and to pay for uncovered medical expenses for the wife for five years; and that the trial court erred in awarding the wife periodic alimony and an attorney’s fee. We will address the husband’s substantive arguments first.
The husband asserts that the trial court’s award to the wife of “exclusive care, custody, and control of the parties’ minor child” violates the statutory section governing child-custody awards. See Ala. Code 1975, § 30-3-151. He also contends that the trial court improperly failed to award joint custody as contemplated by § 30-3-152(a), Ala.Code 1975. When appellate courts review a child-custody determination that was based upon evidence presented ore tenus, we presume the trial court’s decision is correct: “ ‘A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal.’ ” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994) (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)). “This presumption is based on the trial court’s unique position to directly observe the witnesses and to assess their demeanor and credibility.... ‘In child custody cases especially, the perception of an attentive trial judge is of great importance.’ Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ. App.1981).” Ex parte Fann, 810 So.2d 631, 633 (Ala.2001).
The husband relies on Cleveland v. Cleveland, 18 So.3d 950 (Ala.Civ.App. 2009), to support his contention that the trial court’s failure to award joint custody of the child to the parties constitutes reversible error, but his reliance on that decision is misplaced. In Cleveland, this court specifically held that “the automatic custody-modification clause” at issue, which changed physical custody of one child based on future contingencies, was improper and due to be reversed. Id. at 952. In Cleveland, this court did not determine that the trial court had erred in awarding sole physical custody of the other child in that case to the mother. This court remanded the case to the trial court for a determination as to what type of custody would be in the first child’s best interests: sole, joint, or shared. Id. at 956.
*963 In this case, however, the trial court’s judgment stated the following regarding custody:
“The Court finds that either the husband or the wife is a fit and proper person to have the care, custody, and control of their minor child.... However, in consideration of this court’s mandate to decide custody based on what is in the child’s best interest, the court finds that the child’s best interests are served by awarding her exclusive care, custody and control to the wife.... ”
Unlike in Cleveland, where the parties had jointly worked out a shared or joint-custody arrangement pendente lite, the parties in this case had proved to be unable to consensually reach such an agreement, and the trial court had been required to set a specific visitation schedule and to supervise it throughout the pendency of the divorce action. In addition, the parties had disagreed as to which extracurricular activities the child should attend, whether the child’s ears should be pierced, and which playmates the child should visit after school.[3] As noted previously, “[t]he trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.” Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996); see also Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994). Based upon the record presented, we cannot conclude that the trial court erred in its determination to award primary physical and legal custody to the wife.[4]
The husband next challenges the trial court’s award of “only” two weeks of summer visitation. We note that “ ‘[t]he trial court is entrusted to balance the rights of the parents with the child’s best interests to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case.’ ” Ratliff v. Ratliff, 5 So.3d 570, 586 (Ala.Civ.App.2008) (quoting Nauditt v. Haddock, 882 So.2d 364, 367 (Ala.Civ.App.2003)). Moreover, “[t]he determination of proper visitation ... is within the sound discretion of the trial court, and that court’s determination should not be reversed by an appellate court absent a showing of an abuse of discretion.” Ex parte Bland, 796 So.2d 340, 343 (Ala.2000). The husband relies solely on Flanagan v. Flanagan, 656 So.2d 1228 (Ala.Civ.App.1995), for the proposition that he is legally entitled to at least four weeks of summer visitation. The trial court in Flanagan had awarded child visitation of one weekend per month, one month during the summer, and one week during the Christmas holidays to the noncustodial parent. This court decided that
“our child support guidelines do not authorize abatement of child support during periods of visitation that are not ‘substantially in excess of those customarily approved or ordered by the court.’ Rule 32(A)(1)(a). If the trial court orders an abatement of support during a standard visitation period, such as the one-month summer visitation period relevant here, then the court has deviated from the guidelines and must state its reasons for the deviation.”
Flanagan, 656 So.2d at 1232 (emphasis added). The husband in this case extrapo *964 lates that, because the father in Flanagan received four weeks in the summer and that that was labeled as “standard,” he necessarily was improperly denied “standard summer visitation” with the child. In this case, however, the husband was awarded visitation every other week from Thursday at 5 p.m. to Sunday at 5 p.m., together with 10 additional holidays, including one-half of the child’s Thanksgiving, Christmas, and spring-break holidays. Comparing the visitation schedule in Flanagan with the visitation awarded in this case, we can see that the husband has been awarded a substantial amount of visitation with the child throughout the year, and we cannot conclude that the trial court erred in awarding the husband only two weeks of visitation during the summer. See Bland, 796 So.2d at 343; see also Gilliam v. Gilliam, 876 So.2d 1135, 1143 (Ala.Civ.App.2003).
The husband also complains that the trial court erred in not abating his child-support obligation. He relies on Flanagan to support his contention that the trial court’s decision not to abate his child-support payments during periods of visitation is an impermissible deviation from the child-support guidelines. He further contends that the trial court imper-missibly attempted to base its child-support decision on future contingencies. None of the cases that the husband cites is applicable to the facts here.
A simple reading of the trial court’s visitation award reveals that the husband has been awarded significantly more time on a biweekly basis than the usual “standard visitation” of alternating weekend-only visitation. Because that schedule gives the husband at least 25-26 additional nights each year with the child, the possibility that the husband might assert the need for an abatement of his child-support obligation was considered, but was rejected, in paragraph 5 of the judgment. See also Rule 32(A)(1)(a), Ala. R. Jud. Admin. We conclude that the trial court’s reference to nonabatement of the husband’s child-support payments is simply a clarification contemplated by the Comment to Rule 32 (as amended to conform to amendments effective October 4, 1993), wherein it is stated that “[a]ny abatement of child support because of extraordinary visitation should be based on visitation in excess of customary visitation.” (Emphasis added.) Although the trial court in this case recognized that the divorce judgment awarded the husband substantial visitation rights, it also recognized, as this court did in Flanagan, that a primary custodian’s continuing costs do not decrease simply because a child spends additional nights with the noncustodial parent. Flanagan, 656 So.2d at 1232. By refusing to deviate from the child-support guidelines, the trial court essentially left in place the traditional monthly payment of child support. Its having done so in no way hampers the husband from seeking a modification of his child-support obligation in the event of a change in circumstances. We cannot conclude from the record presented, however, that the trial court improperly ordered the husband to pay the full amount of his child-support obligation each month.
The husband asserts that the trial court erred in ordering him to “secure” his child-support and periodic-alimony payments by acquiring life-insurance policies in the amounts of $100,000 and $50,000, respectively. He relies on our decision in Ratliff, supra, to support his contention that ordering him to maintain insurance policies to benefit his child and the wife requires reversal. The husband’s reliance on Ratliff is misplaced. The pertinent language in Ratliff reads:
“A trial court may include a provision in a divorce judgment requiring a former spouse to maintain a life-insurance poli *965 cy for the benefit of the other former spouse. Strong v. Strong, 709 So.2d 1259 (Ala.Civ.App.1998). However, our caselaw indicates that it is within the trial court’s discretion whether to order a divorcing spouse to maintain a life-insurance policy for the benefit of the other spouse. See, e.g., Bush v. Bush, 784 So.2d 299, 300 (Ala.Civ.App.2000).”
Ratliff, 5 So.3d at 584 (emphasis added); see also Powell v. Powell, 628 So.2d 832 (Ala.Civ.App.1993). To conclude that Ratliff stands for the proposition that a trial court may not order a payor spouse to secure his or her court-ordered obligations with a life-insurance policy simply misreads the plain language of that opinion.
Although the husband is correct that periodic-alimony payments end upon the death of either spouse and are therefore not chargeable against a payor spouse’s estate, see Borton v. Borton, 230 Ala. 630, 632, 162 So. 529, 530 (1935), he completely misapprehends the propriety of the trial court’s order to maintain a life-insurance policy that pays a benefit to the wife at his death. In dozens of reported cases, trial courts have secured various monetary obligations, including periodic-alimony awards, by requiring the payor spouse to obtain life insurance naming the recipient spouse as beneficiary. See, e.g., Lackey v. Lackey, 18 So.3d 393 (Ala.Civ.App.2009); Decker v. Decker, 11 So.3d 249 (Ala.Civ.App. 2008); and Sellers v. Sellers, 893 So.2d 456 (Ala.Civ.App.2004). Ratliff and Powell, supra, reiterate the well established principle that the decision whether to require a payor spouse to obtain life insurance to benefit the recipient spouse is absolutely discretionary with the trial court. We cannot conclude that the trial court acted outside its discretion in ordering the husband to maintain life-insurance policies to secure his court-ordered payments to the wife and the child.
The husband’s unarticulated concern apparently underlying his challenge to the life-insurance-policy obligation in the judgment is his view that the trial court inequitably allocated the marital debts in a manner that renders him unable to meet his own monthly expenses and to make the court-ordered payments to benefit the wife and the child. That concern is more fully developed in his challenge to the periodic-alimony award, the obligation for him to provide medical-insurance and motor-vehicle insurance for the wife for five years, and the allocation of the wife’s automobile-loan payments and uncovered medical bills for five years to the husband.
Dividing marital property . and determining whether to award alimony are matters within the sound discretion of the trial court, and the judgment of the trial court is presumed correct when evidence is heard ore tenus. See Ex parte Durbin, 818 So.2d 404, 408 (Ala.2001). When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living enjoyed by the parties during the marriage; and the fault of the parties contributing to the breakup of the marriage. See Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App. 1996). Ultimately, “ ‘ “[property divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court.” ’ ” Ex parte Drummond, 785 So.2d 358, 361 (Ala.2000) (quoting Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ. App.1996), quoting in turn Duckett v. Duckett, 669 So.2d 195, 197 (Ala.Civ.App. 1995)); see also Hall v. Hall, 895 So.2d 299, 303 (Ala.Civ.App.2004).
*966 Throughout his final substantive arguments, the husband repeatedly asserts that the trial court’s imposition of child-support and periodic-alimony obligations, combined with the instructions to obtain $150,000 in life insurance, to provide the wife with medical coverage for five years, and to satisfy the automobile-loan secured by the wife’s motor vehicle and to pay insurance premiums on that vehicle for five years constitutes reversible error. The husband contends that he proved that his regular income will not defray those expenses and allow him the ability to simultaneously pay his living expenses.
The problem with the husband’s contention is twofold. First, the record is clear that neither party had any appreciable assets at the time of the divorce trial. Second, between his retirement and salary, the husband’s monthly income was over four times what the wife was earning working two jobs. Essentially, the trial court was faced with dividing marital debt in the absence of awardable marital assets to offset that debt.
The husband testified that his regular monthly income totaled $5,294. Although he contended at trial that his monthly living expenses were roughly equivalent to his net income, the husband admitted during cross-examination that he was renting — and restoring — a seven-room, three-bathroom house “as an investment.” He stated that he was paying $1,000 in monthly rent to his brother-in-law as well as “paying for the supplies to [renovate] the house.” At trial, the following exchange occurred between the wife’s attorney and the husband:
“[Husband]: Yes, sir, I am paying a thousand dollars a month. And to answer your question, do I plan to stay in it or move, I’ll see what the economy is doing. I may sell it in a year or two when the economy comes back.
“[Wife’s attorney]: How are you going to sell it if you don’t own it?
“[Husband]: [The brother-in-law] is going to sell it.
“[Wife’s Attorney]: Well, is he going to give you some of the money when he sells it?
“[Husband]: I hope. I’m doing all of the work.”
Furthermore, the husband testified that he was paying both parties’ monthly car-loan payments and insurance for both vehicles, the parties’ consolidated marital-debt payment, and the remaining balance on the parties’ camper debt, an amount totaling roughly $2,100. At trial, the husband had also included $266 in his monthly-expense estimate to pay for medical-insurance coverage and uncovered monthly medical expenses for the wife and the child.
In contrast, the wife testified that she was earning approximately $1,304 per month working two jobs and that she was living with her mother because she could not afford to rent an apartment. She testified that she would be unable to rent a two-bedroom apartment for less than $600 per month, and she estimated that the monthly utility bills would cost an additional $300-$400. The wife also stated that during the marriage she had attended community college and had earned an emergency medical technician license, but that she was presently unlicensed and would need extensive coursework and retesting to regain her license. She stated that she planned to return to college to complete her undergraduate degree so that she would not need to work part time as a substitute teacher but could be employed full time in a better-paying position than as a hotel-desk clerk.
Based upon his substantially larger income and work experience, the husband was clearly in a better financial position to assist the wife through periodic-alimony *967 payments, provision of medical and motor-vehicle insurance, and payment of the martial debts. The trial court received evidence from which it could conclude that, at the time the judgment was entered, the husband had the ability to earn more than the wife, or, in the alternative, to spend less on himself than the wife was able to do. As noted previously, the husband had already included the wife’s motor-vehicle loan and insurance payments in his monthly expense calculation. He had also included the unpaid medical bills of the wife and the child in his regular monthly expenses.
However, the husband’s undisputed testimony that he was spending all but $1,000 of his monthly income at the time of trial supports his contention that the judgment ordering him to obtain $150,000 in additional life insurance, to pay $1,000 in periodic alimony, to pay $636 in monthly child support, and to pay the other court-ordered monthly monetary obligations (roughly totaling $1,500) is financially crippling and, therefore, erroneous. See Daugherty v. Daugherty, 579 So.2d 1377, 1380 (Ala.Civ.App.1991) (trial court erred in awarding entire marital estate to wife combined with large periodic-alimony award that financially crippled husband); see also R.L.W. v. C.L.W., 872 So.2d 876, 879 (Ala.Civ.App.2003), and Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala.Civ.App. 1998).
The husband also asserts that the trial court erred by ordering him to pay $7,500 toward the wife’s attorney’s fees because, he says, he has no assets from which to draw that amount of money.
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).”
Glover v. Glover, 678 So.2d 174, 176 (Ala. Civ.App.1996).
In the present case, the trial court ordered the husband to pay $7,500 toward the wife’s attorney’s fees. The husband asserts that no evidence of a reasonable attorney’s fee was offered at trial and that the award is, therefore, in direct contravention of Cunningham v. Edwards, 25 So.3d 475 (Ala.Civ.App.2009). We note that Cunningham dealt with a post-judgment challenge to the reasonableness of a guardian ad litem fee that was submitted over a month after a modification judgment had been entered as well as a challenge to an attorney-fee award. In that case, unlike the instant case, neither party could be considered the prevailing party. In this case, the husband initially filed the action seeking a divorce, he requested joint custody, and he requested that the wife be responsible for her motor-vehicle debt and for one-half of the marital debts. The judgment awarded the wife custody of the parties’ child, periodic alimony, and relieved her of responsibility to pay for any marital debt, including that secured by the motor-vehicle awarded to her. Considering the factors that the trial court must consider in its decision to award attorney’s fees, especially considering the outcome of the litigation and the wife’s minimal in *968 come, we cannot find error in the decision to award her an attorney’s fee. The problem arises from the amount of the award in light of the husband’s income, his other court-ordered monetary obligations, and the trial court’s failure to hold a hearing on the husband’s postjudgment motion.
The husband’s postjudgment motion challenged the failure of the trial court to award joint legal and physical custody of the child to the parties; his motion also challenged essentially all the financial aspects of the divorce judgment, including the requirement to secure his financial obligations with life-insurance policies and payment of $7,500 toward the wife’s attorney’s fee. The failure to hold a post-judgment-motion hearing, when requested (as here), is erroneous. Chism v. Jefferson County, 954 So.2d 1058, 1086 (Ala. 2006) (quoting Ex parte Evans, 875 So.2d 297, 299-300 (Ala.2003)). However, that error is harmless if “ ‘there is ... no probable merit in the grounds asserted in the motion or ... [if] the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.’” Id. (quoting Historic Blakely Auth. v. Williams, 675 So.2d 350, 352 (Ala. 1995)).
Although we have concluded that the trial court could properly award sole legal and physical custody of the child to the wife, could properly award the wife periodic alimony and relief from all marital debts, and could properly require the husband to acquire, or to maintain, life-insurance policies to benefit the wife and the child as it did, we must also conclude that the multiple monetary obligations imposed upon the husband possibly exceed his ability to pay. Based upon the record before us, we cannot say that the husband’s post-judgment challenge to the cumulative financial obligations imposed, including the attorney-fee award to the wife, is without merit. Therefore, the trial court erred to reversal in denying a hearing on the husband’s motion to alter, amend, or vacate. In so holding, we do not reach the question whether the trial court acted outside its discretion in ordering the husband to pay any or all of the challenged monetary obligations, but we remand the case for the trial court to consider that issue on the basis of the record and the parties’ arguments at a proper postjudgment-motion hearing.
For the foregoing reasons, although we affirm the trial court’s judgment as to the substantive issues of child custody, visitation, and child support, and although we hold that the trial court has the discretion to order the husband to maintain life-insurance policies to benefit the wife and the child, the remaining monetary aspects of the judgment are reversed for failure to hold a postjudgment hearing on the husband’s challenge thereto, and this cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN, J., concurs in the result, without writing.
MOORE, J., concurs in the result, with writing.

. The husband also noted that the wife is 3 years younger than he is.

. The husband testified that he had not loved the wife since 2005; the wife testified she had thought that the parties had had a solid marriage until the husband had told her in September 2007 that he wanted a divorce.

. At one contentious point in the proceedings, the wife’s attorney commented to the judge that, "frankly, I don’t think [the parties] can agree on the weather."

. We do not endorse the trial court’s use of the term "exclusive" in the custody award; we merely read that language, however inartful, to award primary physical and legal custody of the child to the wife, subject to the husband's visitation rights.