THOMPSON, Presiding Judge.
Sherry Denise Darling ("the wife") appeals from a judgment of the Pickens Circuit Court ("the trial court") divorcing her from Raymon Devell Darling ("the husband"). In the judgment, the trial court divided the marital property, awarded the parties "joint legal custody" of their minor child, and did not require either party to pay child support.
The wife filed a divorce complaint on February 26, 2013. After the parties requested almost a dozen continuances between them, this matter came to trial on October 21, 2016. The evidence adduced at trial indicated the following. The parties married on January 3, 1994. Two children were born during the marriage. One of the children had reached the age of majority by the time of the trial; the other child was 14 years old at the time of the trial.
The wife, who was 48 years old at the time of the trial, held several jobs during the marriage. She said that she had never earned more than $15 an hour in any of those jobs, which included working for health-care providers, at a garment plant, and at a WalMart "check center." The wife said that the husband had been the primary breadwinner throughout the marriage, and the parties agreed that the husband had paid all of the household bills, with the exception of the wife's cellular-telephone bill. At the time of the trial, the wife worked for the Pickens County Community Action Head Start program, where she had been employed for approximately ten years. The wife also testified that she was working toward earning an associate's degree.
The wife testified that she earned $12.64 an hour. She presented tax forms for 2015 indicating that she earned $17,191 that year. The wife explained that, in the summer months, she received a total of $2,409 in unemployment benefits. She testified that, during the months she worked, her take-home pay was approximately $1,400 each month. The wife said that she did not have a retirement account or savings because, she said, she did not make enough money to put any into a retirement account or a savings account. The husband disputed the wife's testimony, saying that the wife "blows" her money on clothes, purses, and shoes and that, even though he had encouraged her to save money throughout the marriage, the wife would not do so.
The husband, who was 47 years old at the time of the trial, worked for Mercedes Benz ("Mercedes"). Before going to work for Mercedes, the husband said, he had worked at Bryce Hospital and the Tuscaloosa police department earning less money than he earns working for Mercedes. The husband testified that he earned $30.04 an hour and that his monthly gross income was $5,340. The husband said his take-home pay was approximately $3,500 each month. The husband testified that his annual income at Mercedes has fluctuated between $60,000 and $86,000, depending on *1091 how brisk sales of the vehicles were. Tax documents submitted at trial indicated that, in 2015, the husband's income from Mercedes was $87,708. At the time of the trial, the husband said, he was scheduled to work 7.2 hours a day, with no overtime. He said that, because of issues with high blood pressure and diabetes, he was no longer able to work long overtime hours that allowed him to earn more than $80,000 in a year. The husband also received annual income from the Department of Veterans Affairs ("the VA") in the amount of $560 each month. The husband testified that he had a retirement account with Mercedes that had a balance of $117,800 at the time of the trial.
Both parties had life-insurance policies. The wife testified that she had recently purchased a $100,000 life-insurance policy naming the children as her beneficiaries. The husband testified that he had two life-insurance policies: one through the VA worth $100,000 naming the wife as the beneficiary and one through Mercedes worth five times his salary. The husband said that the wife was the beneficiary of most of the Mercedes policy "and then the kids kind of step down." The husband testified that he was willing to leave the wife as the beneficiary of his VA policy but that he would like to be able to change the other policy upon being granted the divorce.
The parties had no joint debts or joint banking accounts. The parties also had four vehicles. At the time of the trial, the wife drove a 2006 Chrysler 300 automobile, which was paid for in full. The husband drove a 2002 Toyota Sequoia sport-utility vehicle and an older-model GMC Sierra pickup truck. The husband also made the lease payment for a 2017 E-Class Mercedes for the parties' older child. The lease was possible through his job with Mercedes.
The husband testified that he had begun having the marital residence built the year before the parties married and that they had lived in that house during the entire marriage. The wife said that she was aware that there were two mortgages on the marital residence at the time of the trial. She said that the payment on the first mortgage was $622 each month and that the payment on the second mortgage was approximately $322 each month. Although the wife said that she did not know the balance owed on either mortgage, the husband testified that the balance owed on the first mortgage was "roughly" $55,000 and that the balance owed on the second mortgage was $23,000.
The wife estimated that the marital residence was worth approximately $140,000. The husband estimated that the marital residence had a value of approximately $165,000. The husband also said that the parties had approximately $80,000 in equity in the marital residence. The wife told the trial court that she would like to remain in the marital residence. The husband testified that he believed it would be fair to allow the wife to remain in the marital residence and to divide the equity between them. The parties also appear to own the lot adjoining the marital residence. It is unclear from the record whether the estimates of the value of the marital residence include the value of the adjoining lot.
The parties also owned a parcel of property across the street from the marital residence. A 1991-model mobile home that the parties own is situated on that property, which, the husband said, comprises approximately an acre and a half. The husband estimated that the mobile home had a value of approximately $10,000. The parties had rented it at one time, he said, but they had received no rental income in four years. There was no indebtedness on the *1092 mobile home or the property on which it is situated, the husband said.
The husband said that he was willing to take the mobile home and the property across the street from the marital residence. He said that he had already moved some furniture and a television to the mobile home and that it was ready for occupancy. The wife said that he had also moved a utility shed and his tools from the house to the mobile home. She said that she had no objection to the removal of the items, with the exception of certain photographs.
At the time of the trial, the parties both still lived in the marital residence, and the husband continued to pay all of the household bills. The husband worked nights and the wife worked days, so, they said, they do not often see each other. The husband testified that the wife usually did not return to the marital residence until after he left for work at about 9:30 or 10 p.m. The wife said that she did not like to be in the marital residence when the husband was there because "an argument starts and, you know, he jumps up in my face and scream and holler, so I just leave." She said that she often went to her parents' house after work.
The husband and the wife, both of whom still lived in the marital residence, each testified to caring for the children while the other was at work. The parties agreed that they each parented the children and that they did not oppose a joint-custody arrangement for the younger child. They agreed that if the wife lived in the marital residence and the husband lived in the mobile home, the children would be able to see either party when they wanted.
On October 31, 2016, the trial court entered the judgment divorcing the parties. The trial court ordered that the parties have "joint legal custody" of the minor child and that neither party would be responsible for paying child support to the other. The husband was awarded the marital residence and the adjoining lot and was ordered to assume all indebtedness on the marital residence. He was also awarded all of the personal property in the marital residence, the 2017 Mercedes automobile, the Toyota sport-utility vehicle, and the GMC pickup truck. The wife was awarded the property across the street from the marital residence and the mobile home located on that property. She was also awarded the Chrysler automobile. Both parties were awarded the personal property in their possession. The trial court explicitly denied all other relief the parties had requested, which would include the wife's request for alimony, a division of the husband's Mercedes retirement account, and a decision regarding who should be the beneficiaries of the parties' respective life-insurance policies. The wife filed a motion to alter, amend, or vacate the judgment, which the trial court denied after a hearing. The wife then filed a notice of appeal to this court.
On appeal, the wife contends that the trial court abused its discretion in dividing the marital property. Specifically, she argues that the property division was inequitable because the trial court failed to divide the husband's retirement account or to determine the beneficiaries of the parties' life-insurance policies.[1]
*1093 "When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala. Civ. App. 2001) ; Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala. Civ. App. 1993) ; and Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties' marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729, 734 (Ala. Civ. App. 2001). '[W]e note that there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.' Yohey v. Yohey, 890 So.2d 160, 164 (Ala. Civ. App. 2004)."
Stone v. Stone, 26 So.3d 1232, 1236 (Ala. Civ. App. 2009). Additionally, it is within the trial court's discretion whether to order a divorcing spouse to maintain a life-insurance policy for the benefit of the other spouse. Alexander v. Alexander, 65 So.3d 958, 965 (Ala. Civ. App. 2010).
In this case, the parties had been married more than 22 years at the time the divorce judgment was entered. The undisputed evidence demonstrated that the husband had been the primary wage earner throughout the marriage. The parties' individual tax returns reveal that, in 2015, the most recent year for which tax returns were available at the time of the trial, the wife had income of $19,600 and the husband had income of $88,247.[2] In other words, the wife's annual income was less than a quarter of the husband's annual income. The marital residence was valued at between $140,000 and $165,000, and the mobile home was valued at $10,000. No evidence was presented as to the value of the property or lots on which those residences sat.
The husband testified that he was willing to give the wife the marital residence and half of the $80,000 in equity that had accrued in that residence during the marriage, saying that he believed it was fair for the wife to receive half the equity. He also said that he had moved furniture and a television to the mobile home and would willingly take the mobile home and the property on which it was located. Nonetheless, the trial court awarded the husband the marital residence. It may have been that the trial court believed that the wife would be unable to continue making the mortgage payments on the marital residence and, therefore, awarded that house to the husband. However, the trial court did not award the wife any portion of the equity in the house. The value of the mobile home was estimated at about a quarter of half the amount of equity in the marital residence. When the value of the marital residence is weighed against the value of the mobile home, the discrepancy between the property awarded to the husband and the property awarded to the wife becomes far greater. In addition, the husband's Mercedes retirement account, *1094 which had a balance of $117,800 at the time of the trial, was accrued entirely during the course of the marriage.
The trial court did not award the wife a portion of the husband's retirement account. The wife was awarded one vehicle, the Chrysler 300, while the husband was awarded three vehicles: the E-Class Mercedes, the Toyota sport-utility vehicle, and the GMC pickup truck.[3] As mentioned, the wife was not awarded periodic alimony, and the issue was not reserved.
The parties are essentially the same age. The husband has high blood pressure and diabetes, but there is no evidence indicating that he cannot continue to work at his job with Mercedes. The wife hopes to earn an associate's degree to enable her to earn more money, but she had not completed that degree at the time of the trial. The trial court divorced the parties on the ground of the irretrievable breakdown of the marriage, and no fault was assigned to either party in causing the breakdown of the marriage. After reviewing the record and the division of marital property, we conclude that the trial court's property division so favors the husband as to be inequitable. The judgment dividing the marital property is plainly and palpably wrong and must be reversed.
The wife also argues that the trial court erred by failing to award child support pursuant to the guidelines set forth in Rule 32, Ala. R. Jud. Admin.
"Under the well-established ore tenus rule, the trial court's judgment is presumed correct; this court will not reverse the judgment absent a showing that the trial court's findings are plainly and palpably wrong or that the trial court abused its discretion. Tompkins v. Tompkins, 843 So.2d 759, 764 (Ala. Civ. App. 2002). Moreover, matters relating to child support 'rest soundly within the trial court's discretion, and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and thus is plainly and palpably wrong.' Bowen v. Bowen, 817 So.2d 717, 718 (Ala. Civ. App. 2001)."
Scott v. Scott, 915 So.2d 577, 579 (Ala. Civ. App. 2005).
Even though the judgment does not set forth a physical-custody arrangement regarding the parties' minor child, the wife does not contest the custody award ordered by the trial court, i.e., that "the parties shall have 'joint legal custody' " of the minor child. The term "joint legal custody" is defined in § 30-3-151(2), Ala. Code 1975, as follows:
"Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions."
The term "joint custody" is defined in § 30-3-151(1) as "[j]oint legal custody and joint physical custody." "Joint physical custody" is defined as "[p]hysical custody ... shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time." § 30-3-152(3).
This court has recognized that there is confusion in the trial courts' use of the various custody terms, and, therefore, we *1095 have interpreted those terms according to the intent of the trial court in using the term. For example, this court has explained:
" 'The trial court's divorce judgment awarded the parties "joint custody," yet it awarded the father "primary physical custody." "These terms have been commonly employed by the bench and bar; however, in light of the definitions of the types of custody set out in the joint-custody statute, those older terms are unclear and ... serve only to confuse the issue of custody." Harris v. Harris, 775 So.2d 213, 214 (Ala. Civ. App. 1999). Using the proper terms set out in the joint-custody statute, § 30-3-151, Ala. Code 1975, the divorce judgment can be construed only one way-that is, it awards the father sole physical custody and the mother and the father joint legal custody. See Harris, 775 So.2d at 214.'
" Richardson v. Fotheringham, 950 So.2d 339, 341 (Ala. Civ. App. 2006)."
Whitehead v. Whitehead, 214 So.3d 367, 371 (Ala. Civ. App. 2016).
Based on the testimony of the parties that, by living across the street from one another after the divorce, the minor child would be able to see either parent as the child desired, and based on its decision not to require either party to pay child support, it appears that the trial court intended to award the parties joint custody, meaning they would have joint legal and physical custody.
As to whether the trial court erred in failing to award the wife child support in accordance with the child-support guidelines set forth in Rule 32, Ala. R. Jud. Admin., this court has recognized that
"when a trial court properly orders joint physical custody to the parties, payment of child support by one spouse to the other is not mandatory. McElheny v. Peplinski, 66 So.3d 274, 282 (Ala. Civ. App. 2010) (citing Allen v. Allen, 966 So.2d 929, 932-33 (Ala. Civ. App. 2007), quoting in turn Boatfield v. Clough, 895 So.2d 354, 357 (Ala. Civ. App. 2004) )."
Bonner v. Bonner, 170 So.3d 697, 705-06 (Ala. Civ. App. 2015). Nonetheless, we have held that the application of the Rule 32 child-support guidelines is mandatory, Smith v. Smith, 587 So.2d 1217 (Ala. Civ. App. 1991), and the trial court cannot deviate from the guidelines without first making specific findings of fact to justify the deviation.
" '...[I]f the trial court enters on the record a written finding, supported by evidence presented to it, that the application of the guidelines would be unjust or inequitable, then the trial court has the discretion to deviate from the guidelines. Rule 32(A)(ii), Ala. R. Jud. Admin.; Smith [v. Smith], 587 So.2d [1217] at 1218 [ (Ala. Civ. App. 1991) ]. If the trial court fails to apply the guidelines or to present findings of fact based upon evidence before the court indicating why the guidelines were not followed, this court will reverse. Simmons v. Ellis, 628 So.2d 804 (Ala. Civ. App. 1993).'
" State ex rel. Department of Human Resources v. Hogg, 689 So.2d 131, 133 (Ala. Civ. App. 1996)."
Nelson v. Landis, 709 So.2d 1299, 1300 (Ala. Civ. App. 1998) (emphasis added).
In this case, after awarding the parties "joint legal custody" of their minor child, the trial court simply stated that "[n]either party is responsible for paying child support to the other." In the judgment, the trial court did not set forth any factual findings explaining why application of the guidelines would be unjust or inequitable or why the it was deviating from the guidelines. Accordingly, the judgment is reversed as to the issue of child support.
*1096 For the reasons set forth above, that portion of the judgment dividing the marital property is reversed and the cause is remanded to the trial court for it to reconsider the property division. In doing so, we note that the trial court may also consider whether the husband, the wife, or both parties are required to maintain a life-insurance policy for the benefit of the other spouse. We reiterate that whether such life insurance is required to be maintained is within the sound discretion of the trial court. We also reverse the judgment to the extent that the trial court did not set forth the factual basis for deviating from the child-support guidelines, and we remand the cause for the trial court to enter an order in compliance with the requirements of Rule 32(A), Ala. R. Jud. Admin.
The wife's request for an attorney fee on appeal is granted in the amount of $1,000.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thomas and Donaldson, JJ., concur.
Moore, J., concurs in part and dissents in part, with writing, which Pittman, J., joins.

In her appellate brief, the wife makes the statement that the trial court did not mention the alimony request she made in her complaint. However, she does not make an argument that the trial court erred or abused its discretion in failing to award her periodic alimony or to reserve the issue of periodic alimony. Therefore, any argument she could have made as to that issue is deemed waived. See Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982) ("When an appellant fails to argue an issue in its brief, that issue is waived.").

We recognize that the husband's tax return reports a different annual income than the tax documents mentioned earlier in this opinion.

The parties do not raise any issues regarding the fact that the E-Class Mercedes was being leased rather than purchased.